UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MELANIE WILSON | : | NO.:  3:02CV1026 (CFD) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NORWICH AND | : | |
| LOUIS T. FUSARO | : | APRIL 27, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, CITY OF NORWICH AND LOUIS T. FUSARO'S, MOTION FOR SUMMARY JUDGMENT**

**I.    FACTS AND ALLEGATIONS OF COMPLAINT**

The plaintiff, Melanie Wilson, brought this action by way of a thirty-seven count Amended Complaint dated September 8, 2003.   Plaintiff alleges that on September 15, 2000, the co-defendant James F. Daigle took several nude photographs of her during her participation in an underage alcohol sting operation, when the plaintiff was 18 years old.  Complaint, Count One, ¶¶2-7.   Plaintiff has also claimed that that on another occasion Daigle took semi-nude photographs of her under the guise of using them to catch a child pornographer, in December 2000.   **Exhibit A**, Deposition of Melanie Wilson, p. 83.  Defendants herein are the Chief of Police, Louis J. Fusaro and the City of Norwich.

Counts One through Fourteen, Thirty-Five and Thirty-Six are directed to the co-defendant, James F. Daigle, and allege invasion of privacy, substantive due process, intentional misrepresentation, negligent infliction of emotional distress, negligent infliction of emotional distress, sexual harassment and negligent misrepresentation.

Counts Fifteen through Thirty-Four and Thirty-Seven are brought against Chief Fusaro and the City, as follows:

Count Fifteen - Negligent training and supervision against City of Norwich.

Count Sixteen – Negligent training and supervision against Fusaro.

Count Seventeen – Violation of C.G.S. § 46a-58 against Fusaro.

Count Eighteen – Violation of C.G.S. § 46a-58 against the City.

Count Nineteen – 42 U.S.C. § 1983 against Fusaro for substantive due process.

Count Twenty – 42 U.S.C. § 1983 against City for substantive due process.

Count Twenty-One – C.G.S. §§ 7-101a and 7-465 indemnification against City for Daigle's invasion of privacy in Count One.

Count Twenty-Two – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's violation of C.G.S. §46a-58 in Count Two.

Count Twenty-Three - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's invasion of privacy in Count Three.

Count Twenty-Four – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's violation of C.G.S. § 46a-58 in Count Four.

Count Twenty-Five – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's violation of plaintiff's substantive due process rights under 42 U.S.C. § 1983 in Count Five.

Count Twenty-Six – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's violation of plaintiff's substantive due process rights under 42 U.S.C. § 1983 in Count Six.

Count Twenty-Seven – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's intentional misrepresentation in Count Seven.

Count Twenty-Eight – C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's intentional misrepresentation in Count Eight.

Count Twenty-Nine - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's negligent infliction of emotional distress in Count Nine.

Count Thirty - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's negligent infliction of emotional distress in Count Ten.

Count Thirty-One - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's infliction of emotional distress in Count Eleven.

Count Thirty-Two - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's infliction of emotional distress in Count Twelve.

Count Thirty-Three - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's sexual harassment in Count Thirteen.

Count Thirty-Four - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's sexual harassment in Count Fourteen.

Count Thirty-Seven - C.G.S. §§ 7-101a and 7-465 indemnification against the City for Daigle's misrepresentation in Counts Thirty-Five and Thirty-Six.

In December 2002, another woman, Kristen Ejchorszt, complained to Deputy Chief Warren Mocek and Chief Louis Fusaro that Daigle had taken semi-nude pictures of her during an underage alcohol sting. **Exhibit B**, Affidavit of Louis Fusaro; **Exhibit C**, Affidavit of Warren Mocek.  An investigation was immediately commenced into Ms. Ejchorszt's complaint.  Id.  Through this investigation, Deputy Chief Mocek learned that Ms. Wilson, the plaintiff herein, had been involved in another liquor sting operation on September 15, 2000.  **Exhibit C**.  He contacted Ms. Wilson on December 11, 2001 in Pennsylvania and interviewed her.  Id.  Ms. Wilson advised she knew about the investigation.  Id.  She told Deputy Chief Mocek that she knew Officer Camp and met Daigle through him.  She described Daigle as an "acquaintance type" friend.  Id.  She denied anything unusual happening and did not report the photographs to Deputy Chief Mocek.  Id.; **Exhibit A**, p. 107-108.  She also told Deputy Chief Mocek that she had a good time and would do it again if given the opportunity. Id.  She said that if something was not right, she would have spoken right up.  Id.

4

On January 4, 2002, Deputy Chief Mocek was called to the police station at approximately 10:00 p.m., being advised that a woman and her daughter were there to make a report related to the Daigle investigation.  Id.  It was at that time that Wilson gave a statement to the police department, stating that Daigle had taken nude photographs of her.  Id.  Prior to this date, Ms. Wilson did not inform anyone at the police department about Daigle's actions.  **Exhibit A**, pp. 154; 107-108; 170-171; and 173.  There is no evidence Chief Fusaro knew about Daigle's actions prior to their occurring.  Id., p. 170-171, 172.  The plaintiff admits it would have been reasonable for Chief Fusaro to assume Officers would not take nude photographs of volunteer operatives and he could not supervise their every action.  Id., p. 174, 167-168.  She also admits that the City had no policy authorizing such conduct.  Id., p. 165-166.  The sole basis for plaintiff's claims against Chief Fusaro and the City is that the events occurred.  Id., p. 172.

These defendants now move for summary judgment on the above counts.  The common law negligent training and supervision claim against Fusaro and the City in Counts Fifteen and Sixteen are barred by governmental immunity at common law and pursuant to C.G.S. § 52-557n.  Counts Seventeen and Eighteen fail as a matter of law because there is no private cause of action under C.G.S. § 46a-58.  The §1983 claim against Chief Fusaro, in his individual capacity, is barred under supervisory liability principles and qualified immunity.  The §1983 claim in Count Twenty against the City

fails as a matter of law because there is no policy supporting Daigle's conduct. Plaintiff's claims for indemnification against the City in Counts Twenty-Two through Thirty-Four as to Daigle actions in Counts One through Fourteen fail as a matter of law because plaintiff failed to provide timely statutory notice, and a municipality is not liable for the intentional conduct of its employee. The indemnification claims in Count Thirty Seven for the allegations of negligent misrepresentation in Counts Thirty-Five and Thirty-Six are also barred for the same reasons.

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 Ed.2d 202 (1986). A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524,

1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246

(1991).  However, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact."  Samuels v. Smith,

839 F.Supp. 959, 962 (D.Conn. 1993).

      The party opposing summary judgment "may not rest upon the mere allegations

or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at

2510; see also, Knight v. United States Fire Insurance Co., 804 F.2d 9, 12 (2d Cir.

1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v.

Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once

the moving party has satisfied its burden of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the non-moving party is required to go

beyond the pleadings by way of affidavits, depositions, and answers to interrogatories

in order to demonstrate specific material facts which give rise to a genuine issue.

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265

(1986).  "Neither courts nor defendants should be subjected to trials which can be little

more than harassment."  Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir.

1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case, which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit.  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay, which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

### B.    Qualified Immunity Generally.

Qualified Immunity shields public officials from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known.  Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Riccuiti v. N.Y.C. Transit

8

Authority, 124 F.3d 123, 127 (2d Cir. 1997).  The doctrine of qualified immunity shields

government officials from liability for civil damages as a result of their performance of

discretionary functions, and serves to protect government officials from the burdens of

costly, but insubstantial, lawsuits.  Harlow, 457 U.S. at 817-18; Lennon v. Miller, 66 F.

3d 416, 420 (2d. Cir. 1995).  This policy is justified in part by the concern that the "fear

of personal monetary liability and harassing litigation will duly inhibit officials in the

discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987).  This

doctrine "'strikes a balance between the need, on one hand, to hold responsible public

officials exercising their power in a wholly unjustified manner and, on the other hand,

to shield officials responsibly attempting to perform their public duties in good faith

from having to explain their actions to the satisfaction of a jury.'" Poe v. Leonard, 282

F.3d 123 (2d Cir. 2002), citing Locurto v. Safir, 263 F. 3d 154, 162-3 (2d Cir. 2001).

Overcoming qualified immunity is a two-part process.  Thomas v. Roach, 165

F.3d 137, 142 (2d Cir. 1999).  First, the plaintiff must allege the violation of a clearly-

established constitutional or statutory right. Id. Second, qualified immunity will only be

denied if a reasonable official should have known that the challenged conduct violated

that established right.  Id. at 142-143, citing Rodriguez v. Comas, 888 F.2d 899, 901

(1st Cir. 1989).  In other words, "even where the plaintiff's federal rights and the scope

of the permissible conduct are clearly established, the qualified immunity defense

protects a government actor if it was 'objectively reasonable' for him to believe that his

9

actions were lawful at the time of the challenged act." Id., Lennon, 165 F.3d at 420,

citing Anderson, 483 U.S. at 641.  "The objective reasonableness test is met—and the

defendant is entitled to immunity –if 'officers of reasonable competence could

disagree' on the legality of the defendant's action." Thomas, 165 F.3d at 143, citing

Lennon, 66 F.3d at 420.

      C.    **Standard for Summary Judgment on Qualified Immunity.**

      In evaluating a motion for summary judgment on the basis of qualified immunity,

the Court must, as a threshold matter, inquire whether, construing the facts most

favorably to the plaintiff, "'the facts alleged show the officer's conduct violated a

constitutional right.'" Poe v. Leonard, 282 F.3d 123, 132 (2002), citing Saucier v. Katz,

533 U.S. 194 (2001).  If so, the Court must determine whether the right in question

was clearly established at the time the violation occurred, in other words, whether "'it

would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted.'" Id.  The second inquiry has been further refined, and qualified immunity is

established when "'(a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not

violate such law.'" Id., citing Teirney v. Davidson, 133 F. 3d 189, 196 (2d Cir. 1998).

"As the Supreme Court has explained, the 'concern of the immunity inquiry is to

acknowledge that reasonable mistakes can be made as to the legal constraints on

particular conduct....if the officer's mistake as to what the law requires is reasonable,

however, the officer is entitled to' immunity.  Thus, if the court determines that the only

conclusion a rational jury could reach is that reasonable officers would disagree about

the legality of the defendant's conduct under the circumstances, qualified immunity

applies." Id. (citations omitted).

> **D.** **Plaintiff's Negligent Supervision Claims in Counts Fifteen and Sixteen Against the City of Norwich and Chief Fusaro are barred by the Doctrine of Governmental Immunity at Common Law And Pursuant To C.G.S.§ 52-557n.**

Counts Fifteen and Sixteen are common law negligent training and supervision

claims.  At common law, municipalities are immune from claims of negligence

involving duties which involve discretion.  Gordon v. Bridgeport Housing Authority, 208

Conn. 161, 180-181 (1988).  The law is clear that the supervision of employees is a

discretionary duty for which governmental immunity applies.  Id.   Given this state of

the law, there cannot be a serious argument to the contrary.  Moreover, courts have

held that the acts of hiring, supervising, training, and firing police officers are

discretionary acts, afforded the protection of governmental immunity.  See, Stiebitz v.

Mahoney, 144 Conn. 443, 446-448 (1957); Coletosh v. City of Hartford, Superior

Court, Judicial District of Hartford at Hartford, Docket No. 0573462 (Wagner, JTR.,

April 13, 1999)(Copy attached as **Exhibit E**); Doe v. Nunes, Superior Court Judicial

District of Hartford at Hartford/New Britain at New Britain, Docket No. 0463832

(Handy, J., March 15, 1995)(Copy attached as **Exhibit F**); Cook v. City of Hartford,

Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No.

0362482 (Aurigemma, J., August 31, 1992)(Copy attached as **Exhibit G**).

C.G.S. § 52-557n[1] also provides immunity to municipalities for actions of their

officials which involve judgment and discretion.  Neither has the plaintiff pled any

statute to abrogate the City's immunity.  Therefore, the plaintiff's negligent supervision

claims are barred as a matter of law and the defendants are entitled to summary

judgment on Counts Fifteen and Sixteen.

### E.    There is no private cause of action under C.G.S. § 46a-58.

In Counts Seventeen and Eighteen of the Amended Complaint, the plaintiff

asserts a cause of action for a violation of C.G.S. § 46a-58. This statute provides:

> (a) It shall be a discriminatory practice in violation of this section for any
> person to subject, or cause to be subjected, any other person to the
> deprivation of any rights, privileges or immunities, secured or protected
> by the constitution or laws of this state or of the Unites States, on
> account of religion, national origin, alenage, color, race, sex, blindness or
> physical disability…

---

[1] (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by:  (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149.  (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by:  (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or willful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.  (Emphasis added.)

(d) Any person who violates any provision of this section shall be guilty of a class A misdemeanor, except that if property is damaged as a consequence of such violation in an amount in excess of one thousand dollars, such person shall be guilty of a class D felony.

The Connecticut District Courts have held that there is no private cause of action under this statute, and this section may only be enforced through the CCHRO's administrative procedures.  Alungbe v. Bd. Of Trustees of Conn. State Univ. System, 283 F. Supp.2d 674, 687 (2003), citing Garcia v. St. Mary's Hospital, 46 F. Supp.2d 140 (1999); Town of West Hartford v. Operation Rescue, 726 F. Supp. 371, 380 (D. Conn. 1989), vacated on other grounds, 915 F.2d 92 (2d Cir. 1990).  Therefore, defendants are entitled to summary judgment on Counts Seventeen and Eighteen.

**F.    Chief Fusaro is Entitled to Summary Judgment on Count Nineteen as There is no Evidence he was Deliberately Indifferent to Daigle's Actions, of Which he was Unaware and he is Entitled to Qualified Immunity.**

In Poe v. Leonard, 282 F.3d 123, 140 (2002), the Second Circuit explained the doctrine of supervisory liability:

A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort. See Blyden v. Mancusi, 186 F. 3d 252, 264  (2d Cir. 1999) (explaining that because section 1983 imposes liability only upon those officials who actually cause a violation, the doctrine of *respondent superior* is inapplicable). We have held that a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury. See, e.g., Johnson, 239 F.3d

13

at 254; <u>Blyden</u>, 186 F.3d at 264-65; <u>Williams v. Smith</u>, 781 F. 2d 319, 323-24 (2d Cir. 1986) (concluding that a prisoner stated a section 1983 claim against the prison superintendent asserting a violation of his rights at a prison disciplinary hearing because the evidence could show either that the superintendent was directly responsible for the conduct or that he allowed an unconstitutional policy or custom to continue despite the frequency of violations during hearings); <u>Meriwether v. Coughlin</u>, 879 F. 2d 1037 1047-48 (2d Cir. 1989) (affirming finding of supervisory liability when evidence showed that supervisors knew or should have known that plaintiff inmates' reputations as alleged planners of a violent insurrection would expose them to extreme hostility from the guards, yet took no precautions for the inmates' safety).

The undisputed facts show Chief Fusaro was unaware of Daigle's actions. Therefore, no supervisory liability claim may lie. Likewise, Chief Fusaro is entitled to qualified immunity because plaintiff's claim against him because it was objectively reasonable for him not to act on something he was unaware of.

## G. <u>The City of Norwich is entitled to summary judgment on plaintiff's §1983 claim.</u>

In order to state a § 1983 claim against a municipal defendant, <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978), requires that the plaintiff allege that the unconstitutional act occurred pursuant to some official policy or governmental custom. Lack of proper training can only support a *Monell* claim if the failure to supervise or the lack of a proper training program for police officers was so severe as to reach the level of "gross negligence" or deliberate indifference to the rights of a plaintiff. <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Walker v. City of New York</u>, 974 F.2d 293, 297 (2d Cir. 1992), cert denied 113 S. Ct.

14

1387 (1993); Owens v. Haas, 601 F.2d 1242 (2d Cir. 1979), cert. denied, 444 U.S.

980.  Claims of negligence, however, do not support a constitutional violation.  Daniels

v. Williams, 474 U.S. 327, 331 (1986).  Plaintiff in this case has not pled, let alone put

forward any evidence that would support gross negligent or deliberate indifference in

the City's supervision of Daigle.  See **Exhibit A**, Deposition of Melanie Wilson.

Plaintiff alleges only that the City "was aware or should have been aware" of Daigle's

actions, a garden variety common law negligent supervision claim.  See Count

Nineteen, ¶ 30.  There is no evidence that a supervisory official had notice Daigle was

going to take semi-nude photographs of the plaintiff, and the plaintiff agrees there was

no policy supporting Daigle's actions.  Id., p. 165-166.

        In Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42 (2d Cir. 1985),

the Second Circuit reviewed a case with similar claims of negligence.  In that case, the

complaint alleged that "'[t]he torts committed against the plaintiff by the individual

defendants were caused due to the negligence' of the municipal defendants because

they knew of should have known that 'the individual defendants were unfit to serve as

peace officers and were dangerous to members of the public such as the plaintiff.'" Id.

at 45.  The Second Circuit confirmed that "Mere negligence in permitting the continued

employment of personnel, however, does not rise to the level of "action pursuant to

official municipal policy of some nature [which] cause a constitutional tort." Id., citing

Monell, 436 U.S. at 691 and Cattan v. City of New York, 523 F. Supp. 598 601-02

(S.D..N.Y. 1981)(allegation of continued employment of a police officer when municipal defendant knew or should have known of his vicious propensities insufficient to state a claim under Section 1983.)

Under these principles, the city is entitled to summary judgment on Count Twenty.

**H.      Daigle's Action in Taking Semi-Nude Photographs of the Plaintiff was so Obviously Inappropriate that Plaintiff Cannot Prove a Lack of Municipal Policy.**

Plaintiff's §1983 claims also fail under a claim of inadequate training because Daigle's actions were so inappropriate that no specific training would have been required.

Because a municipality has no respondent superior liability under § 1983, the plaintiff must show that inadequate training or supervision was so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for training.  City of Canton v. Harris, 489 U.S. 378 (1989).

In the Second Circuit, to show deliberate indifference, the plaintiff first prove that a policymaker knows 'to a moral certainty' that the employees will confront a given situation. Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992), cert. denied, 113 S.Ct. 1387 (1993).  A policy maker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.  Id.  Second, a plaintiff must

16

show that the situation either presents the employee with a difficult choice of the sort

that training or supervision will make less difficult or that there is a history of

employees mishandling the situation.  Id.  Third, the plaintiff must show that the wrong

choice by the city employee will frequently cause the deprivation of a citizen's

conditional rights.  Id. However, where the employee's action is obviously

inappropriate, no "training" is required, and the municipality cannot be held liable for

the employee's rogue conduct.  Daigle's alleged semi-nude photography of the plaintiff

falls within this class of cases where no specific training would be required.   In

Walker, the plaintiff claimed the police department was deliberately indifferent to his

rights by failing to train and supervise officers "not to Commit perjury or aid in the

prosecution of the innocent."   The Second Circuit explained:

> It is not enough to show that a situation will arise and that taking the wrong
> course in that situation will result in injuries to citizens…City of Canton also
> requires a likelihood that the failure to train or supervise will result in the officer
> making the wrong decision.  Where the proper response …is obvious to all
> without training or supervision, then the failure to train or supervise is generally
> not 'so likely' to produce a wrong decision as to support an inference of
> deliberate indifference by city policymakers to the need to train or supervise.  Id.
> at 299-300.

Officers also do not need training not to engage in inappropriate behavior or

behavior which would violate the basis norms of human conduct and common sense.

See Hernandez v. Borough of Palisades Park Police Dep't, 2003 WL 202441

(3d Cir. 2003)(no need to train police officers not to commit robbery)(not reported);

Barney v. Pulsipher, 143 F.3d 1299, 1308(10th Cir. 1998)(no training needed against

sexual assault of inmates); Hayden v. Grayson, 134 F.3d 449, 457 n.14 (1st Cir.

1998)(no need for training where officer intent on discriminating against a particular

class of crime victims and resulted from alcohol abuse, lassitude or personal

animosity); Floyd v. Waters, 133 F.3d 786, 796 (11 Cir. 1998)(the BOE was entitled to

rely on the common sense of its employees not to engage in wicked and criminal

conduct); Sewell v. Town of Lake Hamitlon, 117 F.3d 488, 490 (11th Cir. 1997)(sexual

molestation of arrestee); Andrew by Fowler, 98 F.3d 1069, 1077 (8th Cir. 1996)("In light

of regular law enforcement duties of a police officer, we cannot conclude that there

was a potentially obvious need for the city to specifically train officers not to rape

young women).

     Daigle did not need any training to alert him to the fact that he should not take

semi-nude photographs of a young volunteer under the guise of legitimacy as part of

the underage liquor operation.  His actions violate common sense and public policy.

He has also received sexual harassment training and prisoner transport training.

**Exhibit B**, Affidavit of Warren Mocek, ¶ 16.  Same sex officers were required for

prisoner transport and body searches.  **Exhibit D**, Prison Transport Policy, p. 2-3, 7.

Daigle violated department policy.  **Exhibit B**, ¶ 13.  He was discharged for his

actions.  **Exhibits B** and **C**.  No more specific training would have been required.

Daigle should have known better based upon basic principles of human decency, common sense and police department training and policy. His rogue, prurient actions cannot be imputed to the Department or the City, which were completely unaware of his design. Furthermore, the plaintiff admits that it would have been reasonable for Chief Fusaro to believe Daigle would not engage in such action. **Exhibit A**, p. 174.

For these reasons also, plaintiff cannot prevail on her §1983 claim against Chief Fusaro and the City of Norwich. Therefore, summary judgment should enter on Counts Nineteen and Twenty.

**I.      Plaintiff's Indemnification Claims Fail for Lack of Proper Notice and There is no Indemnification for Intentional Conduct.**

The plaintiff has brought claims for indemnification pursuant to C.G.S. §§ 7-101a and 7-465. Pursuant to § 7-465, a municipality is obligated to pay on behalf of any employee:

> all sums which the employee becomes obligated to pay by reason of the liability imposed upon such employee for infringement of any person's civil rights, or for physical damages to person or property, if the employee, at the time of the occurrence, was *acting in the performance of his duties and within the scope of his employment*, and if such occurrence, was *not the result of any willful or wanton act of such employee in the discharge of such duty.*
> . . .
>
> No action for person injuries or damages to real or personal property shall be maintained against such municipality  and employee jointly unless such action is commenced with two years after the cause of action therefore arose <u>and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed</u>

<u>with the clerk of such municipality within six months after such cause of action
has occurred.</u>

The plaintiff's cause of action accrued in September and December 2000, when
Daigle allegedly took nude photographs of her.  Any notice of claim related to the
September 2000 sting should have been given by March 2000.  Likewise, any notice
of claim related to the December 2000 incident should have been provided by July
2001.  However, notice was not given until January 2002, at least six months too late.
See, plaintiff's original complaint dated May 13, 2002, Count Sixteen, ¶ 35.  Attached
as **Exhibit H**.  Therefore, all of the plaintiff's indemnification claims fail as a matter of
law.  Summary judgment should enter in favor of the defendants on Counts Twenty-
Two through Thirty-Four and Thirty-Seven.

Neither was Daigle acting in the performance of his duties and acted
intentionally when he photographed the plaintiff.  Thus, C.G.S. § 7-465 squarely
precludes the City's liability for indemnification.  <u>Wells v. Town of Plainfield</u>, 2003
WL1787971, *8 (Conn. Supra. 2003)(Attached as

**Exhibit I**).

III.    **CONCLUSION**

For the foregoing reasons, plaintiff's §1983 claims against Chief Fusaro and the City of Norwich fail because they had no notice of Daigle's actions.  Plaintiff's negligent supervision claims are barred by governmental immunity.  The City of Norwich cannot be required to indemnify Daigle for his conduct because plaintiff failed to provide notice pursuant to the terms of C.G.S. § 7-465.  Therefore, summary judgment should enter on all Counts against these defendants.

 DEFENDANTS,
CITY OF NORWICH
AND LOUIS T. FUSARO

By_____
 Melinda A. Powell
 Ct17049
 Howd & Ludorf
 65 Wethersfield Avenue
 Hartford, CT  06114
 (860) 249-1361
 (860) 249-7665 (Fax)
 E-Mail:  mpowell@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 27th day of April, 2005.

Stephen E. Reck, Esquire
Michael J. Cartier, Esquire
Mariani & Reck, LLC
83 Broad Street
New London, CT  06320

John R. Williams, Esquire
William & Pattis, LLC
51 Elm Street
New Haven, CT  06510

Eric P. Daigle, Esquire
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

_____
Melinda A. Powell

22