UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MELANIE WILSON                    :        NO.: 3:02-CV-1026 (CFD)

v.                                :

CITY OF NORWICH, ET AL            :        OCTOBER 17, 2006

<u>**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**</u>

**I. Statement of Facts.**

    **A. Summary of Facts.**

    This is an action arising out of the misconduct of a police officer,

defendant James F. Daigle, Jr., a detective lieutenant with the defendant Norwich

Police Department. Daigle recruited the plaintiff to assist the Norwich Police

Department in an undercover, underage alcohol purchase "sting" operation. On

the evening of the purported "sting" operation, Daigle required the plaintiff to

pose for photographs, fully nude, front and back, under the pretext that such

photographs were necessary police protocol in sting operations. Daigle further

recruited the plaintiff to participate in a child pornography "sting" where he again

took nude photos of the plaintiff from the waste up. When the plaintiff learned that

Daigle had made misrepresentations to her to induce her into posing nude for

him, she developed severe anxiety and depression, requiring intensive therapy and counseling that continues to the present time.

**B. Facts.**

In early September, 2000, the plaintiff, Melanie Wilson, then age Eighteen (18), volunteered to a request from defendant, James Daigle, to assist the City of Norwich Police Department in an undercover, underage alcohol "sting" operation, aimed at identifying liquor stores that were selling alcohol to minors. On September 15, 2000, the defendant, Daigle, took nude photographs of the plaintiff, front and back.

Daigle told the plaintiff that it was necessary for him to take photographs of her totally nude in order to show that she was not wearing a wire or tape recorder. He assured her that such photographs were standard police practice. He then photographed the plaintiff fully nude. The plaintiff was uncomfortable, but believed Daigle's representations that the photographs were necessary and required as part of her voluntary participation in the "sting" operation.

The plaintiff was approached again by the defendant, Daigle, in October, 2000, asking her to participate in a child pornography investigation which would require more nude pictures of her to be taken. In December, 2000, the

defendant, Daigle, took seventeen (17) photos of the plaintiff in various poses, nude, from the waist up.

The pictures which are subject to the plaintiff's complaint, were taken on a digital camera and saved on a disk or printed form, or both. The defendants have represented that they do not know what happened to the photographs. However, defendant Fusaro, the Chief of Police, allowed Daigle access to his computer and his desk before dismissing him from his position, thereby giving Daigle the opportunity to remove evidence of the photographs from the Police Department premises.

The plaintiff subsequently learned, in December, 2001, that the photographs Daigle took were not standard police procedure in sting operations after reading newspaper articles accusing Daigle of similar misconduct.  See statement Exhibit A and excerpt from plaintiff's transcript p. 5-6. As a result of the defendant's misconduct, the plaintiff has suffered serious emotional injuries, including emotional distress, anxiety, and depression requiring counseling that continues to the present time.

Daigle was placed in charge of the underage alcohol compliance operations in 2000 to 2001. The Norwich Police Department did not have any written policies concerning the treatment of female volunteer undercover operatives. The defendants have not disclosed, pursuant to plaintiff's request for discovery, any policies concerning the selection of individuals to participate as undercover operatives in the alcohol compliance program and was unaware that all such operations had used female volunteer undercover operatives. There was

no disclosure of policies concerning the use of wire devices on the underage women volunteers used in the alcohol compliance program.

Daigle's superiors in the police department were aware that he took nude or partially nude photographs of women employed by the police department. In 2002, Detective Mark Rankowitz testified that Daigle showed him several nude or semi-nude photos of Kristen Vanase, a former dispatcher, and in Sergeant Karen Valcourt approximately ten (10) years prior. See Exhibit B. Prior to March, 2002, Officer Michael Buddington and then Detective Patrick Deveney, showed Detective Scott Smith partially nude photos retrieved from Daigle's desk of Kristen Vanase, in which she was wearing a button-down shirt with the initials "JDF" or "JFD", and Sergeant Karen Valcourt. See Exhibit C. In the early 1990's, Officer Anastas Provatas was shown nude photos of Karen Valcourt by Daigle and observed other photographs in a collection being kept at Daigle's home. See Exhibit D. While in the locker room at the Norwich Police Station, Officer Kevin Leach was shown photos of Karen Valcourt. See Exhibit E. Daigle was observed by Officer Michael Buddington with photos of Vanase in see-through lingerie. See Exhibit F. Sergeant James Deveny testified that he went into a desk drawer at the police station and withdrew a manila envelope and found photos of a partially nude Vanase wearing Daigle's open dress shirt. See Exhibit G.  In an interview with Joseph Russo, a retired Norwich officer, Deputy Chief Warren L. Mocek writes in his internal investigation that Russo stated, after inquiring about the investigation, "Well, I'm a good friend of Jimmy's, and I hope none of this is true. But, gotta tell ya, it's got his trademark signature all over it." See Exhibit H.

There are at least two other lawsuits pending in this district against these same defendants, based on virtually the same conduct by Daigle. Those cases are *Ejchorszt v. Daigle*, No. 3:02-CV-1350 (CFD) and *Earl v. Daigle*, No. 3:03CV-01323 (SRU). The Court may take judicial notice of the record in these other actions, including their brief and exhibits.

**II.    Legal Argument.**

  **A.    There exists a question of material fact as to whether Daigle was the final policymaker for underage alcohol operations.**

The City's assertion that its chief of police has final policymaking authority with respect to police activities does not defeat plaintiff's §1983 claim. The evidence in the record before the Court strongly supports an inference that police officials delegated final policymaking authority to James Daigle in the conduct of the underage alcohol compliance investigations. The City of Norwich may still be liable for Daigle's conduct in the alcohol compliance operations if plaintiff can establish that an official with final policymaking authority delegated that authority to a subordinate. *City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988)*; *Monistere v. Memphis, 115 Fed. Appx. 845, 852-53 (6th Cir. 2004); Ulrich v. City* and *County of San Francisco, 308 F.3d 968, 985 (9th Cir. 2002)*(plaintiff may establish municipal liability by "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of a subordinate"(emphasis added)).

Whether final policymaking authority with respect to the underage alcohol compliance operations was delegated to Daigle presents a question of material

fact. *Ulrich, 308 F.3d 985-86*. The facts before this Court strongly support the conclusion that the Chief of Police delegated policymaking authority for the conduct of underage alcohol investigations to Daigle. Daigle and another officer were the only members of the police force to receive training for implementing the alcohol compliance program because they were in charge of implementing the program in the Norwich Police Department.

Daigle was given unfettered discretion on how to conduct the alcohol compliance operations. Daigle's superiors were not familiar with the protocols associated with operations investigating sales of alcohol to minors, including the selection and participation of volunteer undercover operatives. During the time Daigle was involved in the underage alcohol compliance program, he received no instruction from any of his supervisors about the conduct of alcohol compliance operations. Daigle conducted the undercover alcohol compliance operations unconstrained by any department policies concerning the selection and treatment of undercover operatives who, by necessity, were under the age of 21. Moreover, the defendants have not disclosed any department policies providing guidance with female volunteers working undercover for the police. Although the Police Department maintained written policies relating to strip searches of prisoners, there were no policies constraining Daigle from requiring Wilson to remove her clothing as part of the undercover operation.

Daigle may be considered the final policymaker with respect to underage alcohol compliance operations if his decisions were final, unreviewable, and "not constrained by the official policies of superior officials." *Feliciano v. City of*

*Cleveland, 988 F.2d 649, 655 (6th Cir. 1993 (citing Praprotnik, 485 U.S. 127)).*
Daigle's decisions in the conduct of alcohol compliance program were final.
There is no evidence in this record that he received any direction from his
supervisors about the specifics of the operation, including the use of the young
women involved in those operations. *Monistere, 115 Fed. Appx. at 852-53.* There
is no evidence that any superior officer reviewed or challenged Daigle's decision-
making authority. Id. Finally, there is no evidence that Daigle was constrained by
any written or unwritten policies governing the alcohol compliance program that
he was in charge of implementing. See Id. There is sufficient evidence in this
record to demonstrate, or at least create a triable issue, that Daigle had the
requisite policymaking authority over underage alcohol compliance operations,
inasmuch as he had been delegated the authority to control his own
investigations.

**B.    The issue as to whether the plaintiff falls under the identifiable
victim exception to §52-557(n) is an issue of fact for the jury.**

An exception to the rule that a Connecticut public official enjoys
governmental immunity even if he is negligent as long as the duty to act involves
the exercise of discretion. In this case, should it be determined that the
defendants acts were discretionary versus ministerial, the plaintiff falls within an
exception to this general rule in that the City of Norwich and Fusaro's failure to
act was likely to subject an identifiable person to imminent harm. See Purzycki v.
Fairfield, 244 Conn. 101, 108 (1998). Connecticut courts have further held that
an identifiable person extends to narrowly defined classes of foreseeable victims.
*Burns v. Board of Education, 228 Conn. 640, 646 (1990).* In this case, the record

clearly shows that the plaintiff falls within this exception in light of Daigle's past actions with regard to females within the department of which Fusaro had knowledge.  In this case, the foreseeable victims are female volunteers or operatives. As set forth previously, it was the City of Norwich and Fusaro that put Melanie Wilson in harm's way by allowing the defendant, Daigle, unfettered control of the underage "sting" operation and the child pornography operation. The issue of whether the defendants actions or failures to act subjectsw an identifiable person or class of persons to imminent harm is a question of fact. *Marzeau v. City of Norwich, 46 Conn. Supp. 197, 203 (1999).*

> **C.    The City, Police Department and Chief of Police are liable for their failure to adequately train or supervise Daigle in the conduct of underage alcohol sales investigations.**

The evidence shows that Daigle was placed in charge of the underage alcohol program without sufficient training or supervision in respect to the volunteer operatives who were recruited to participate in investigations. Daigle received no or insufficient training with respect to selection and recruitment of volunteers, or the use of such volunteers during an investigation, especially in the practice of equipping the volunteers with audio monitoring devices, such as the "body mike," used on the plaintiff. The failure to adequately train Daigle in the conduct of alcohol investigations and the use of underage volunteers led to the violation of plaintiff's constitutional rights.

In order to establish municipal liability for its failure to train or supervise, the plaintiff must satisfy three requirements: (1) The policymaker knows to a moral certainty that the employees will confront a given situation, (2) that the

situation presents the employees with a difficult choice of the sort that training will make less difficult or that there is a history of mishandling the situation, and (3) that the wrong choice by a city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker v. City of New York, 974 F.2d 293, 297298 (2d Cir. 1992, cert. denied, 113 S.Ct. 1387 (1993)*(citations omitted). "Where the plaintiff establishes all three elements, then we think it can be said with confidence that the policymaker should have known that inadequate training or supervision was 'so likely to result in a violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need.' " Id., 298, citing *City of Canton v. Harris, 489 U.S. 378, 390 (1989).*

The failure of the police department to have any policy guiding police officers in the recruitment and use of underage female volunteers demonstrates its deliberate indifference. In Walker the Second Circuit opined that the failure of the police department to have any policy for the proper handling of exculpatory evidence, at issue in that case, could provide the basis for a deliberate indifference claim. Id. The instant case differs from Walker in that the failure to have a policy with respect to underage female volunteers clearly led to the violation of Wilson's constitutional right to privacy in her unclothed body. See *Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002)*(police officer violates constitutional right to bodily privacy by manipulating circumstances to view, photograph or otherwise record that person's unclothed or partially unclothed body without his or her consent and without proper law enforcement interest).

The Norwich Police Department did not have any written or unwritten policies concerning the treatment of female volunteer undercover operatives. The defendants have not disclosed any kind of training relating to the use of minors as undercover operatives or female operatives in particular. Nor were any policies concerning the selection of individuals to participate as undercover operatives in the alcohol compliance program portrayed. There were no policies concerning the use of wire devices on the underage women volunteers used in the alcohol compliance program.

None of the records provided show that any of Daigle's supervisors provided any training concerning the use of female volunteers.

The Chief of Police, as the identified policymaker for police activities, certainly knew that his officers would be working with underage female volunteers in the conduct of alcohol compliance investigations. The investigations, by their very nature, required the participation of an underage volunteer, and it is reasonable to assume that some of those volunteers would be female. It was also expected that compliance operations would take place at night, on "overtime," and that the undercover operative would, for both evidentiary and safety reasons, be equipped with a listening device. The Chief should be charged with knowledge that his officers would need to equip underage female volunteers with listening devices. Thus, this case satisfies the first element of a deliberate indifference claim.

Moreover, the evidence developed during the course of the internal investigation establishes that as early as 1990, Daigle's superiors in the police

10

department knew of Daigle's fascination with photographing women in various stages of undress. See Exhibit I. His nude photos of a civil employee, Kristin Vanase, and a woman police employee, Karen Valcourt were the subject of much discussion in the department. In 1998 Daigle displayed a nude or partially nude photo of Kristin Vanase to the then Captain Burnes, who had heard about the photo and asked Daigle to show it to him. He also discussed the photo with then Deputy Chief Fusaro. See Exhibits B-I.

These facts are sufficient to raise a triable issue as to whether Daigle's superiors "knew or should have known that there was a high degree of risk" that Daigle "would behave inappropriately with a woman during this assignment, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [plaintiff]." *Poe, 282 F.3d 142*. The nude photo incidents should have put Daigle's superiors on notice of his inappropriate sexual proclivities toward woman. In placing Daigle in charge of the underage alcohol compliance program, utilizing underage female volunteers, Fusaro placed Daigle in a position where, given his known past sexually voyeuristic conduct, he would be able to subject young women, eager to be helpful, to similar inappropriate conduct and a violation of their constitutionally protected privacy rights.

There is also a history that Daigle mishandled the underage alcohol investigations using young female volunteers. In each of the investigations that Daigle headed, he convinced the young operatives that they had to expose their

breasts, and in two other cases, their entire unclothed bodies, ostensibly for evidentiary photographs. The evidence shows that Daigle misused his authority to view and photograph unclothed young women under the guise of legitimate police business.

The second prong of the Walker failure to train/supervise test is satisfied both by evidence that officers would be working with impressionable young women, eager to please the police and the evidence that Daigle had a history of mishandling that very situation.

The Chief should also have recognized the very real risk that the young female operatives would be exploited by officers involved with the compliance program, leading to the deprivation of their constitutional rights. *Walker, 974 F.2d 297-98*. There were no policies or practices in place to ensure that officers would not sexually exploit vulnerable young women. There was no effort to require female police officers to participate and no rules or policies to prevent an officer from being alone with a young female volunteer. It should have been plain to the Chief, or other supervisors, that the failure to safeguard the volunteer operatives would leave them at very real risk of being victimized sexually by officers' inappropriate conduct.

The record raises very substantial issues of material fact with respect to whether the Chief, or other of Daigle's supervisors, failed adequately to train or supervise Daigle in the conduct of the underage alcohol compliance program. Summary judgment may not be appropriately entered on plaintiff's training/supervision claim.

**D.    The evidence shows that there was a policy or custom of sexually exploiting young female volunteers in the alcohol compliance program**.

The evidence shows that Daigle instituted a policy or custom of sexually exploiting the young women he recruited to act as volunteers in the alcohol compliance program. In each of the investigations, after he was placed in charge, he convinced each of the young women that they had to expose all or part of their unclothed bodies to him based on false claims of legitimate police purposes.

**E.    Fusaro is not entitled to qualified immunity for Daigle's Conduct, Counts Nineteen and Twenty**

The defendants have not established that they are entitled to qualified immunity.

> Qualified immunity shields public officials from liability for civil damages if their actions were objectively reasonable, as evaluated in    the    context of legal roles that were "clearly established" at the time. . . . In evaluating a motion for summary judgment on the basis of qualified immunity, we must as a threshold matter inquire whether, construing the facts most favorably to the plaintiff "the facts alleged show the officer's conduct violated a   constitutional right." . . . If so, we must determine whether the right in question was clearly established at the time the violations occurred, that    is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." . . .

*Poe, 282 F.3d 132* (citations omitted). The evidence and the case law require that qualified immunity be denied in the instant case.

First, the facts in this record demonstrate that Wilson has established a violation of a clearly established right. Id., 133-34. At the time of the acts complained of, Wilson's right to bodily privacy in her unclothed body was clearly established. Id., 137-39. In Poe, the Second Circuit held that, as of 1992, there was a clearly established, right to privacy in one's unclothed or partially

unclothed body, regardless whether the right is established through the auspices of the Fourth Amendment or the Fourteenth Amendment. Id., 138-39. Moreover, the Court went on to say that even in the absence of case law recognizing such a right, the sexual violations in that case would violate substantive due process rights because the officer's behavior, if proven, would shock the conscience as "arbitrary government action." Id. 139.

Under the second prong of the municipal immunity inquiry, it would have been clear to a reasonable officer that his conduct in viewing and photographing an underage female volunteer was unlawful in the situation he confronted. Id. 132. There can be no question that a reasonable officer would have realized that this conduct was unlawful. In Poe, the Second Circuit held that a police officer's videotaping an unsuspecting, unclothed volunteer in a police training video from the waist up shocked the conscience, was intended to injure and was unjustified by any governmental interest.

> Let us be clear: a police officer violates a person's constitutional right to bodily privacy when that officer manipulates the circumstances to view, to photograph, to videotape or otherwise record that person's unclothed or partially unclothed body without his or her consent where, as here, there is no conceivable investigative or otherwise proper law enforcement interest advanced by such a viewing.

Id. 139. Thus, it is unquestionable that Daigle violated Wilson's right to bodily privacy in the underage alcohol investigation.

Daigle's supervisors may also be held liable if, in supervising Daigle, they exhibited gross negligence, deliberate indifference or high risk that Daigle would violate Wilson's constitutional rights and that such neglect resulted in Daigle violating her rights. Id. 140. As argued above, there is at least a question

of material fact whether Daigle's supervisors, including Chief Fusaro, knew of

Daigle's past fascination with photographing unclothed women. See §B supra.

Daigle's exploitive past conduct should have alerted his supervisors that placing

him in charge of unprotected young women placed them at great risk to similar

exploitation. Placing Daigle in charge of the alcohol compliance program that

necessarily utilized underage volunteers, demonstrates their deliberate

indifference to the constitutional rights of the young female operatives.

    In Poe, the Second Circuit held that supervisory liability would be

established by

> sufficient facts to raise a triable issue a fact as to whether [the
> supervisor] knew or should have known that there was a high
> degree of risk that [the officer] would behave inappropriate with a
> woman during his assignment, but either deliberately or recklessly
> disregarded that risk by failing to take action that a reasonable
> supervisor would find necessary to prevent such a risk, and that
> failure caused a constitutional injury to [the plaintiff].

    Id. 142. Unlike the situation in Poe, however, the facts of the instant case

demonstrate that Daigle's past conduct toward women, particularly his proclivity

for nude photography, made him an inappropriate candidate to supervise

investigations involving vulnerable young women volunteers. By turning a blind

eye to Daigle's past conduct, the Chief and other supervisors either deliberately

or recklessly disregarded that risk by failing to take action or institute protective

measures that reasonable supervisors would have found necessary to prevent

the exploitation of the young women under Daigle's control.

    Department supervisors were at least on constructive notice of Daigle's

problematic proclivities toward women. They should have known that there was a

"high degree of risk that Daigle would exploit underage female operatives over whom he had control. The supervisors violated established law by placing Daigle, with his known history of exploiting women, in charge of vulnerable underage female volunteers.

Placing Daigle in charge of a program that used underage women as volunteers, was objectively unreasonable. Id. 146. Although supervisors knew that Daigle had photographed a police dispatcher (Kristen Vanase) and another officer (Karen Valcourt) in the nude, there appears to never have been any kind of department inquiry into his conduct. See Exhibits B-H. Instead, the supervisors placed Daigle in charge of young women he could exploit in a similar fashion.

The evidence in this record sufficiently raises a triable issue regarding Fusaro and the department's gross negligence or deliberate indifference to the constitutional rights of the young female volunteers Daigle recruited for his alcohol compliance investigations. Based on his past history, there was a high risk that Daigle would exploit these young women as he had done with this coworkers. The supervisory inaction in this case should render Fusaro and the department ineligible for qualified immunity in this case. Accordingly, summary judgment should not enter on the issue of qualified immunity.

**F.    Whether the defendants, Fusaro and The City of Norwich's, failure to protect the plaintiff from Daigle due to a special relationship is a question of fact to be determined by the jury.**

The plaintiff in this case had a special relationship with the City of Norwich and Fusaro in that she was a volunteer operative for purposes of the underage "sting" operation and child pornography operation. The special

relationship exception applies to persons whose freedom is limited by the municipality. See *G-69 v. Degnan, 745 F. Sup 254 (D. N. J. 1990)* in which the Court applied the special relationship rule to undercover witnesses. The plaintiff in the instant matters, freedom was restricted in that as a volunteer operative, her ability to question, or her ability to refuse the requests of Daigle were limited by the official nature of the operation. By accepting the plaintiff into the operation, the City of Norwich and Fusaro limited Ms. Wilson's ability to act upon her own behalf and, as such, both Fusaro and the City of Norwich had a duty to protect Ms. Wilson. This duty is heightened in light of Daigle's past history of misconduct directed toward women. The existence of whether a special relationship exists is a question of fact for a jury to determine.

**G.    The issue as to whether the City of Norwich and Fusaro created the danger to Ms. Wilson is a question of fact to be determined by the jury.**

Liability is imposed upon State actors under a due process theory, if those State actors affirmatively assist in creating or increasing the danger to a victim. See *Dwares v. City of New York, 985 F. 2d 94, 98, 99 (2nd Cir. 1983)*. In this case, the failure of the City of Norwich and Fusaro to act on Daigle's past history and allow him to be "in charge" of the underage "sting" operation created a danger to the plaintiff that her rights would be violated. Both the failure to act by the defendants and their affirmatively putting Daigle in charge of the underage "sting" operation and child pornography operation affirmatively created the danger to which the plaintiff was subject to. Both their action and inaction increased the vulnerability of the plaintiff to have her rights violated. As such, the

issue as to whether there is a "State-created danger" is a question for the jury to determine in light of the evidence that exists.

### H. Plaintiff's indemnification claims raise issues of material fact, Counts Twenty-One through Thirty-Seven.

Plaintiff's claim for indemnification pursuant to CGS § 7-465 are supported by the facts in the record and, at least, present triable issues, precluding summary judgment. Under § 7-465, a municipality is obligated to pay on behalf of any employee, all sums which the employee becomes obligated to pay by reason of the liability imposed upon such employee for infringement of any person's civil rights, if the employee was acting in the performance of his duties and within the scope of his employment and if the violation was not the result of any willful or wanted act of the employee of the discharge of his duties. Contrary to defendant's contention, Daigle was plainly acting in the performance of his duties when, during the course of an underage alcohol compliance investigation, utilizing the plaintiff as a volunteer operative, he required her to partially disrobe for photographs that were supposedly to be used as evidence. These facts demonstrate that Daigle was acting in the performance of his duties during the course of the alcohol compliance operation. There is at least a question of material fact as to whether Daigle was operating in the performance of his duties and within the scope of his employment during the investigation.

Whether Daigle's conduct was willful or wanted presents an issue of material fact under Connecticut law. Eg, Suffield *Development Associates Ltd. Partnership v. National Loan Investers LP, 97 Conn. App. 541 (September 19,*

*2006)*, slip op at * 17 (findings regarding recklessness, intent, or wantedness are factual findings.

Summary judgment may not properly enter on the indemnification claim pursuant to § 7-465, because there exists issues of material fact with respect to those claims.

### H.    The notice given to the City of Norwich was timely.

The plaintiff did not learn that the photos taken until at the earliest, December of 2001. See plaintiff's testimony, p. 97 of her deposition transcript, copy attached hereto. Notice was given to the City of Norwich on January 10, 2002, well within six (6) months of when the action accrued. For purposes of determining when an action accrues, our courts have held that accrual is when the damages occur or should have been discovered. In this case, discovery did not take place until December of 2001. Additionally, the plaintiff was not damaged until she learned the true nature of why the photographs were taken. As such, the cause of action didn't accrue until the plaintiff discovered or should have discovered through the exercise of reasonable care that she had been injured. *Lambert v. Stovell, 205 Conn. 1, 529 A.2d 710 (Conn., 1987)*.

It would be inequitable to bar the plaintiff's claim because she discovered the harm after the six (6) months notice period had passed. See *Handler v. Remington Arms Co., 144 Conn. 316 (1957)*.

### III. Conclusion

For all the foregoing reasons summary judgment may not properly enter against the City of Norwich, James F. Daigle or Louis T. Fusaro.

Respectfully submitted
THE PLAINTIFF,
MELANIE WILSON


By: _____/s/_____


Stephen E. Reck
Fed. Bar No. Ct07909
Mariani & Reck, LLC
83 Broad Street
New London, CT 06320

(860) 443-5023
Her Attorney

**CERTIFICATION OF SERVICE**

I hereby certify that on October 17, 2006, a copy of the foregoing
Memorandum of Law in Opposition to Motion for Summary Judgment
was filed electronically and served by mail on anyone unable to accept electronic
filing. Notice of this filing will be sent by e-mail to all parties by operation of the
Court's electronic filing system or by mail to anyone unable to accept electronic
filing as indicated in the Notice of Electronic Filing. Parties may access this filing
through the Court's CM/ECF System.


_____/s/_____

Stephen E. Reck