UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MELANIE WILSON | : | NO.: 3:02CV1026 (CFD) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NORWICH, ET AL | : | OCTOBER 31, 2006 |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

The defendants hereby reply to the plaintiff's Memorandum in Opposition to

Motion for Summary Judgment (Doc. 108) filed on October 17, 2006, and the plaintiff's

identical re-filing of her Memorandum in Opposition to Motion for Summary Judgment

(Doc. 109) filed on October 18, 2006.  As is more particularly set forth below, the

plaintiff fails to demonstrate the existence of any genuine issue of material fact sufficient

to defeat the defendants' Summary Judgment Motion.

**I.    THERE EXIST NO DISPUTED ISSUES OF MATERIAL FACT AS THE PLAINTIFF HAS
ADMITTED ALL FACTS SET FORTH IN THE DEFENDANTS' LOCAL RULE 56(a)1
STATEMENT THEREBY ENTITLING THE DEFENDANTS TO JUDGMENT AS A MATTER OF
LAW AS TO ALL CLAIMS AGAINST THEM**

Pursuant to Local Rule 56(a)1, all material facts set forth in the defendants' Local

Rule 56(a)1 Statement "will be ***deemed admitted*** unless controverted by the [Local

Rule 56(a)2 Statement] required to be filed and served by the opposing party."  D.

Conn. L. R. 56(a)1 (emphasis added).  Additionally, each of the plaintiff's denial of a

material fact set forth in the defendants' Local Rule 56(a)1 Statement must be followed

by a specific citation to an affidavit and/or other admissible evidence supporting such a

denial, the failure of which "may result in the Court deeming certain facts admitted in accordance with Rule 56(a)1."

The plaintiff in this matter has not filed a Local Rule 56(a)2 Statement denying any of the undisputed material facts proffered by the defendants. Accordingly, the plaintiff is deemed to have admitted all material facts set forth in the defendants' Local Rule 56(a)1 Statement. The defendants are, therefore, entitled to judgment as a matter of law as set forth in their summary judgment motion as no genuine issues of material fact exists.

## II. PLAINTIFF'S FAILURE TO BRIEF ISSUES RAISED IN THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONSTITUTES A WAIVER

In her Opposition Memorandum, the plaintiff failed entirely to oppose the defendants' arguments as to Counts 17 and 18 which purport to state a cause of action pursuant to Conn. Gen. Stat. § 46a-58 against Chief Fusaro and the City of Norwich respectively. As a result, these claims are deemed abandoned. See Rose v. Panolam Industries International, Inc., 301 F.Supp.2d 239, 247 (D. Conn. 2004).

It is generally recognized that to avoid abandoning an issue by failure to brief it properly, a litigant must present "analysis rather than mere abstract assertion." Dumas v. Strange, 2002 WL 1608280 *7 (D. Conn. 2002), citing Cummings v. Twin Tool Mfg. Co., 40 Conn. App. 36, 45 (1996); see also Norton v. Sam's Club, 145 F.3d 114, 117-18 (2d Cir. 1989) (issues not sufficiently argued in the briefs are considered waived; Farnham v. Windle, 918 F.2d 47, 51 (7th Cir. 1990) (plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted waiver).

Plaintiff's failure to present legal arguments to support certain of her claims requires that the defendants be granted summary judgment on these issues. In

particular, the plaintiff failed to address defendants' argument for the dismissal of

Counts 17 and 18 which purport to state a cause of action pursuant to Conn. Gen. Stat.

§ 46a-58 against Chief Fusaro and the City of Norwich respectively, on the basis that

said statute does not create a private cause of action.  These claims are deemed

abandoned by the plaintiff's failure to brief the same.  The defendants are, therefore,

entitled to the entry of summary judgment as to Counts 17 and 18.

## III.    CO-DEFENDANT JAMES DAIGLE WAS NOT THE FINAL POLICYMAKER FOR THE CITY OF NORWICH

The plaintiff attempts to save her § 1983 claims from dismissal by arguing the

City of Norwich delegated to Daigle final policymaking authority over alcohol compliance

operations within the Department; thus, Daigle's conduct in sexually exploiting her

under the pretext of standard police procedure constituted accepted policy of the

municipality.  (See Pl.'s Opp. Summ. J. pp. 5-7.)  This theory of liability has not been

pled anywhere in the plaintiff's complaint.  Moreover, the plaintiff's claim in this regard is

unsupported by undisputed evidence, legal precedent and commonsense.

As a preliminary matter, the plaintiff's Amended Complaint is wholly devoid of

any claim that co-defendant James Daigle was a final policymaker for the City of

Norwich.  While Count Twenty of the Amended Complaint purports to allege a cause of

action for a violation of the Fourteenth Amendment, brought pursuant to § 1983, it

makes absolutely no mention of municipal liability on the basis that Daigle was a final

policymaker.  On the contrary, the Amended Complaint references only Chief Fusaro as

the policymaker for the City.  (See Amended Complaint, Count Fifteen, ¶ 16; Count

Twenty, ¶ 27.)  Moreover, the plaintiff's only reference to co-defendant Daigle's capacity

in this action is as a "Detective Sergeant with the Norwich Police Department . . . acting

as a police officer while on duty in that capacity." (See id., Count One, ¶ 3.) Pleadings must give fair notice of the claims alleged to afford the adverse party the opportunity to answer and prepare for trial. See Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995). It is entirely improper to permit the plaintiff's new legal theory by way of an opposition memorandum. Accordingly, plaintiff's argument regarding final policymaking by Daigle should be stricken.

Notwithstanding the above, contrary to the plaintiff's unsupported assertions, James Daigle was not a final policymaker with respect to alcohol compliance operations within the City of Norwich's Police Department, nor was he the final policymaker with respect to the alleged sexual exploitation of a young female operative under the pretext of standard police procedure.

There exists no respondeat superior liability under § 1983. See Monell v. Dept. of Social Servs., 436 U.S. 658, 663, 98 S.Ct. 2018 (1978). Liability may attach to a municipality only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. Only those persons with final policymaking authority can create official policy, thus subject the municipality to liability. See City of St. Louis v. Praprotnik, 485 U.S. 112, 129-130, 108 S.Ct. 915 (1988).

"Whether a particular municipal employee is a final policymaker depends on the interpretation of the relevant state law." Looby v. City of Hartford, 152 F.2d 181, 188 (D. Conn. 2001), citing McMillian v. Monroe City, 520 U.S. 781, 786, 117 S.Ct. 1734 (1997). "It is not sufficient for Plaintiff to show that the official had discretion in a certain area;

'[o]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.'" <u>Knight v. Hartford Police Department</u>, 2006 WL 1438649 (D. Conn. 2006), attached as **Exhibit A**, <u>quoting</u> <u>Jeffes v. Barnes</u>, 208 F.3d 49, 57 (2d Cir. 2000). An official is not a final policymaker when (1) he is constrained "by policies not of that official's own making," (2) the officials decisions are subject to review, and (3) the policy decision purportedly made by the official is outside the realm of his grant of authority. <u>See</u> <u>Praprotnik</u>, 485 U.S. at 127.

In support of her argument, the plaintiff incorrectly places emphasis on Daigle's limited discretion in the manner of conducting underage alcohol compliance investigations, and wholly fails to cite to any evidence supporting her contentions regarding the scope of Daigle's conduct of the underage sting operations. (<u>See</u> Pl.'s Opp. Summ. J. pp. 6-7.) Nevertheless, the issue is not Daigle's general discretion in conducting an investigation, but instead, whether Daigle was delegated final policymaking authority for the entire department in enacting policy concerning the sexual exploitation of young female undercover operatives. To hold that Daigle was given final policymaking authority with respect to this issue lacks all commonsense, warranting a finding that any investigating officer engaging in illegal or inappropriate sexual prurient conduct could legally bind a municipality merely because his investigation involved use of judgment.

Moreover, the ***undisputed facts*** establish that Chief Fusaro was the sole and final policymaker of the City of Norwich's Police Department. (<u>See</u> Def.'s Local Rule 56(a)1 Statement, ¶ 14; Fusaro Aff., ¶ 10, Def.'s Mem. Summ. J. Exh D; Mocek Aff., ¶ 15, Def.'s Mem. Summ. J. Exh. C.) The ***undisputed facts*** further establish that the City

of Norwich had no policy which authorized Daigle's nude photography of the plaintiff.

(See Def.'s Local Rule 56(a)1 Statement, ¶ 12; Deposition of Melanie Wilson, at p. 165, Def.'s Mem. Summ. J. Exh. A.)

The plaintiff relies upon wholly unsupported conjecture that Daigle was given unfettered discretion on how to conduct the sting operations, and was permitted to conduct the operations unconstrained by department policies or instruction from supervisors.  (See Pl.'s Opp. Summ. J. p. 6.)  The plaintiff offers no support for these self-serving contentions.

Contrary to the plaintiff's baseless assertions, Lieutenant Franklin Ward was the commander of the Detective Division, and directly supervised Daigle and the institution of the alcohol compliance operation.  (See IA Tr. of Franklin Ward Statement, pp. 4-5, 18, 32, attached as **Exhibit B**.)  Lieutenant Ward was present on the date of the sting operation involving the plaintiff, and met with both the plaintiff and Liquor Control personnel prior to commencement of the operation.  (See Tr. Ward, pp. 29-30, **Exhibit B**.)  Lieutenant Ward knew and understood that female operatives were to be wired by other female operatives, as a matter of commonsense and City policy.  (See Tr. Ward, pp. 16-18, **Exhibit B**.)  Daigle's method and manner of investigation was clearly subject to supervisor review and the constraints of proper police procedure, departmental policy and ethical conduct.

The plaintiff also cannot reasonably dispute that Daigle's conduct was prohibited by the City of Norwich' Sexual Harassment Policy.  (See City of Norwich Sexual Harassment Policy, attached as **Exhibit C**.)  In addition to the City's Sexual Harassment Policy, Daigle's conduct was further constrained by departmental policy, which

ultimately was cited as the reasoning for his employment termination.  Daigle's violation

of departmental policy included the following: (1) conduct unbecoming an officer, (2)

violation [by analogy from an individual arrested to a volunteer] of the Department's strip

search policy, (3) failure to conform to the police code and canon of ethics, (4)

inappropriate use of his official position, (5) failure to adhere to the Department's

missions, goals and objectives [inclusive of fostering public confidence], (6) neglect of

duty, (7) general incompetence and extraordinarily poor judgment. (See City of Norwich

Police Department IA Report, dated May 22, 2002, pp. 111-112, attached as **Exhibit D**.)

Lastly, Daigle's sexual exploitation of the plaintiff was clearly beyond any realm of

authority he may have had in conducting alcohol compliance operations.

The plaintiff's claim that Daigle was a final policymaker, thus his illegal conduct

constituted accepted governmental policy, is nothing more than a transparent attempt to

hold the City of Norwich liable on the basis of _respondeat superior_ liability.  The plaintiff

offers no material issue of facts or legal argument to the contrary.  The defendants are,

therefore, entitled to summary judgment on plaintiff's § 1983 claims set forth in Counts

19 and 20 of the Amended Complaint.

## IV.   THE CITY AND POLICE CHIEF WERE NOT DELIBERATELY INDIFFERENT IN THEIR TRAINING AND SUPERVISION OF DAIGLE

The plaintiff further argues that the City of Norwich, the Police Department[1] and

its Police Chief failed to sufficiently train or supervise Daigle in the proper procedure for

selection and recruitment of volunteers and wiring of volunteers during the investigation,

---

[1] While the plaintiff references the Norwich Police Department, the Department has not been named as a defendant in this action, nor is it an independent legal entity amenable to suit.  See Knight, **Exhibit A**. The plaintiff's error in this regard is no doubt attributed to the fact that her objection to the defendants' instant summary judgment motion is simply a verbatim recitation of the objection filed by a plaintiff in another action relative to the co-defendant's conduct.

and that this failure to train or supervise Daigle led to the violation of the plaintiff's constitutional rights. (See Pl.'s Opp. Summ. J. p. 8.)

The recent District Court decision Jane Doe II v. City of Hartford, 2005 WL 2009051 (D. Conn. 2005) is on point with this issue and offers guidance. The Honorable Alan H. Nevas found:

> To constitute deliberate indifference in a municipal failure to train or supervise claim, a plaintiff must show that (1) a policymaker knew to a moral certainty that his or her employees will confront a given situation; (2) the situation would present employees with a difficult choice of the sort that training or supervision would make less difficult, or a history of mishandling the situation; and (3) the wrong choice by a city employee would frequently cause the deprivation of a citizen's constitutional rights. See Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir.1992). Where the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise. See id. at 299-300 (applying City of Canton, 489 U.S. at 390 n. 10).

Jane Doe II v. City of Hartford, 2005 WL 2009051 *5, attached as **Exhibit E**.

In Jane Doe II, the City of Hartford and the Police Chief were charged with the failure to train or supervise police officers, who allegedly sexually assaulted prostitutes while on-duty. Id. The plaintiff claimed that the City and the City's Police Chief were liable because they did not require gender-sensitivity training or other training that would have prevented the constitutional violation. Id.

Citing Walker, Judge Nevas found that, "because it should be obvious to officers without training or supervision that it is inappropriate and, indeed, unlawful to sexually assault prostitutes, the plaintiff may only survive summary judgment by producing some evidence that policymakers were aware of that type of misconduct, but failed to institute appropriate training or supervision." Jane Doe II, 2005 WL 2009051 *6, **Exhibit E**,

<u>citing</u> <u>Walker</u>, 974 F.2d at 300.  Because there was no evidence policymakers were aware of the specific conduct; namely, the assaults, the plaintiff's claim failed on summary judgment.  <u>Id.</u>

As in <u>Jane Doe II</u>, it should be obvious to officers without training or supervision that it is inappropriate and unlawful to sexually exploit a young female operative under the pretext of standard police procedure.  Thus, the plaintiff in this case may only survive summary judgment by producing evidence that the City or the Police Chief was aware of the type of misconduct by Daigle, but failed to institute appropriate training or supervision.  <u>See</u> <u>Walker</u>, 974 F.2d at 299-300.

The plaintiff contends that she raises a triable issue of fact by way of the City and Police Chief's prior knowledge of certain conduct by Daigle.  In particular, the plaintiff claims that the City and the Police Chief knew of Daigle's fascination with photographing women in various stages of undress; thus, they were deliberately indifferent in placing Daigle in charge of the alcohol compliance program, which involved the use of young impressionable female operatives.  (See Pl.'s Opp. Summ. J. pp. 10-11.)

While the plaintiff refers and relies upon Daigle's alleged fascination with photographing women in various stages of undress, the plaintiff entirely ignores material context and what policymakers knew concerning these events.  The plaintiff refers to two past events involving nude/semi-nude photography by Daigle of City employees. The first occurrence involved an employee, Karen Valcourt, who posed nude for Daigle in 1987 for one photograph fourteen (14) years before the incident involving the plaintiff), while in a consensual relationship with Daigle.  (<u>See</u> IA Tr. Daigle Statement,

9

4/3/02, pp. 355-356, attached as **Exhibit F**).  In 1990, Patrolman Thomas Peterson became upset after learning of the photograph's existence, but Daigle denied the existence of this photograph when confronted by Peterson.  (See id. at pp. 361-362.) The plaintiff offers no evidence that the City or the Police Chief was aware of this photograph before the internal investigation of the incidents alleged in the plaintiff's Amended Complaint.

The second occurrence involved an employee, Kristen Vanase, who voluntarily posed for Daigle in 1997 semi-clothed for a calendar advertising Daigle's cigar store business  (See id. at pp. 355-356.)  One photograph of Kristen Vanase was provided to Captain Burnes, who sought the photo to assist him in an investigation concerning a complaint made by Vanase against him.  (See id. at pp. 362-363.)  In furtherance of this investigation involving Burnes, Daigle conveyed to then Deputy Chief Fusaro the existence of the partially nude calendar photographs.  (Id.)  This is the extent of the City of Norwich or Police Chief Fusaro's purported knowledge of Daigle's past photography of nude/semi-nude women.

The plaintiff's reliance upon these two events as somehow placing the City and the Police Chief on notice of a high degree of risk that Daigle will sexually exploit young female operatives is completely absurd.  A plaintiff must demonstrate that the prior misconduct known by policymakers was closely related to the deprivation of federal rights.  See Bryan County Commissioners v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).  "[T]here must be an affirmative link between the [past misconduct] and the particular constitutional violation."  Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985).  Police Chief Fusaro's knowledge of semi-nude photographs of

Vanase taken by Daigle did not expose Daigle as a sexual deviant and a potential offender of young female operatives. The photographs taken of Vanase were consensual, taken while off-duty and for Daigle's legal business pursuits, being entirely dissimilar to the depraved constitutional violation alleged by the plaintiff in this case. Accordingly, the defendants are entitled to summary judgment as to the plaintiff's § 1983 claims in Counts 19 and 20 of the Amended Complaint.

**V.    THERE IS NO EVIDENCE THE CITY OR ITS POLICYMAKERS HAD A POLICY OR CUSTOM OF SEXUALLY EXPLOITING YOUNG FEMALE VOLUNTEERS**

The plaintiff next argues that Daigle instituted a policy or custom of sexually exploiting young women he recruited as volunteers. As set forth above, municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Thus, municipal liability is limited to actions for which the municipality is actually responsible. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As previously stated, Daigle is not a policymaker, nor did he create an official policy or custom of the municipality to sexually exploit young female operatives. Moreover, the **undisputed facts** establish that the City of Norwich had no policy or custom which authorized Daigle's nude photography of the plaintiff. (See Def.'s Local Rule 56(a)1 Statement, ¶ 12; Deposition of Melanie Wilson, at p. 165, Def.'s Mem. Summ. J. Exh. A.) Moreover, Daigle's alleged misconduct was undertaken in secrecy with the specific intent that his superiors would not learn of his scheme. In fact, the plaintiff herself concedes that Daigle contacted her and advised her to deny that anything occurred if she were contacted about the events, and she complied. (See Deposition of Melanie Wilson, at pp. 107-08, Def.'s Mem. Summ. J. Exh. A.)

Accordingly, there exists no issue of material facts and the defendants are, therefore, entitled to summary judgment as to the plaintiff's § 1983 claims.

## VI.   NO GENUINE ISSUE OF MATERIAL FACT EXISTS THAT CHIEF FUSARO IS ENTITLED TO QUALIFIED IMMUNITY

The plaintiff further argues that Chief Fusaro is not entitled to qualified immunity for his alleged failure to train and supervise Daigle.  (See Pl.'s Opp. Summ. J. pp. 13-16.)  In support of this contention, the plaintiff argues that an issue of fact exists as to whether Chief Fusaro knew of Daigle's fascination with photographing women.  (Id. at p. 15.)

As indicated in Section IV above, Chief Fusaro had no prior knowledge regarding Daigle's photographing of underage volunteers.  Moreover, as indicated therein, Chief Fusaro's purported knowledge that Daigle had taken photographs of another officer while in a consensual relationship and for his independent business pursuits several years prior to the incidents alleged can hardly have put him on notice that Daigle would engage in the constitutional violations alleged by the plaintiff.  Chief Fusaro cannot, therefore, said to have deliberately or recklessly disregarded a high degree of risk that Daigle would photograph underage volunteers under the pretext of police business.

Based on the foregoing, it was objectively reasonable for Chief Fusaro to believe that his conduct did not violate the plaintiff's constitutional rights.  Moreover, reasonable supervisors confronted with the circumstances faced by Chief Fusaro could disagree as to the legality of his conduct.  Chief Fusaro is, therefore, entitled to qualified immunity in this matter.  See Poe, 282 F.3d at 146-47; Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

**VII.   THE PLAINTIFF'S NEWLY RAISED FAILURE TO PROTECT CLAIMS SHOULD BE STRICKEN AND ARE UNSUPPORTED BY THE UNDISPUTED EVIDENCE AND LEGAL PRECEDENT**

The plaintiff further attempts to save her § 1983 claims from dismissal by arguing the City of Norwich and Chief Fusaro failed to protect the plaintiff from the harm inflicted by Daigle, and owed such duty under the theories of a "special relationship" or the "state-created danger" doctrine.  (See Pl.'s Opp. Summ. J. pp. 16-18.)  These theories of liability have not been pled anywhere in the plaintiff's Amended Complaint. Moreover, the plaintiff's claims in this regard are unsupported by the undisputed evidence in this matter and legal precedent.

As a preliminary matter, the plaintiff's Amended Complaint is wholly devoid of any allegations, let alone a claim that the City of Norwich or Chief Fusaro failed to protect her, that there existed a special relationship between her and the defendants triggering a duty to protect her, or that the defendants affirmatively created the danger to her.  Pleadings must give fair notice of the claims alleged to afford the adverse party the opportunity to answer and prepare for trial.  See Simmons, 49 F.3d at 87.  It is entirely improper to permit the plaintiff's new legal theories by way of an opposition memorandum.  Accordingly, plaintiff's argument regarding a failure to protect pursuant to a special relationship and/or a state-created danger should be stricken.

The purported "special relationship" and "state-created danger" doctrines referred to by the plaintiff were set forth in DeShaney v. Winnebago County Dep't. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 259 (1989).  In DeShaney, the U.S. Supreme Court addressed the issue of whether the federal Due Process Clause required a State to protect the life, liberty and property of citizens from harm by private actors.  The Court concluded that nothing in the language of the Due Process Clause

itself afforded such protection.  See DeShaney, 489 U.S. at 195.  In so concluding, the

Court noted that the Due Process Clause was a limitation on the State's power to act,

and not a guarantee of safety and security.  Id.  The Court further noted that the Due

Process Clause "forbids the State itself to deprive individuals of life, liberty or property

without 'due process of law,' but its language cannot fairly be extended to impose an

affirmative obligation on the State to ensure those interests do not come to harm

through other means."  Id.  Thus, the purpose of the Due Process Clause is "to protect

the people from the State, not to ensure that the State protected them from each other."

Id.

        In  DeShaney, the plaintiff brought suit against local officials and social workers

for harm suffered by her minor son following a severe beating by his father.  Id. at 191.

The possibility of child abuse by the child's father had been brought to the attention of

the defendants on several occasions, one occasion even resulting in removal of the

child from his father's custody.  Id. at 192-93.  The child was returned to his father's

care, after which additional reports of suspected child abuse were noted.  Id.  The

child's father ultimately beat him so severely that he suffered a life-threatening coma

and significant brain damage.  Id.  The Court concluded that a Due Process Violation

was not present as the State played no part in creating the danger suffered by the child,

nor did it do anything to render the child any more vulnerable to the danger.  Id. at 201.

This language has since become known as the "state-created danger" exception.

        The DeShaney Court further recognized that there are certain limited

circumstances in which a State may have an affirmative duty to protect individuals

pursuant to a "special relationship."  Id. at 197-98.  The Court was careful to note that

such a duty stemmed from "the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the deprivation of liberty triggering the protections of the Due Process Clause . . . ." Id. at 200.  Moreover, the Court stated that the affirmative duty to protect in such circumstances arose not from the State's knowledge of the individual's predicament, "but from the limitation it has imposed on his freedom to act on his own behalf." Id.

Contrary to the plaintiff's assertions, the defendants did not restrict her freedom in any manner to decline Daigle's request so as to trigger a special relationship, nor did they incarcerate, institutionalize, or otherwise similarly restrain her personal liberty.  On the contrary, by her own sworn testimony, the plaintiff concedes that she had the freedom to refuse to permit Daigle to take the photographs of her, and in fact did so initially with regard to the second set of photos.  (See Deposition of Melanie Wilson, pp. 79-80, attached as **Exhibit G**.)  She then reconsidered and decided to consent to the photos.  (Id.)  The plaintiff further concedes that she was free to limit the scope of the photographs, and declined Daigle's request to pose for fully nude photos.  (Id. at pp. 84-85.)  Likewise, she chose photos to be deleted if she felt uncomfortable with them.  (Id. at p. 87.)  Accordingly, by the plaintiff's own sworn testimony, the defendants cannot be said to have imposed a limitation on her freedom to act on her own behalf.

Finally, contrary to the plaintiff's unsupported assertions, the defendants cannot be said to have affirmatively created or increased the risk of danger to the plaintiff.  As indicated in Section IV above, the defendants had no prior knowledge, let alone any indication that Daigle would photographs underage volunteers under the pretext of

police business.  In fact, Daigle's alleged misconduct was undertaken in secrecy with the specific intent that his superiors would not learn of his scheme.  (See Deposition of Melanie Wilson, at pp. 107-08, Def.'s Mem. Summ. J. Exh. A.)  Accordingly, the defendants' act of permitting Daigle to carryout the underage alcohol sting operations cannot be deemed to affirmatively created or increase the danger to the plaintiff.

The defendants are, therefore, entitled to judgment as a matter of law.

**VIII.   THE IDENTIFIABLE VICTIM AT IMMINENT HARM EXCEPTION TO THE DOCTRINE OF GOVERNMENTAL IMMUNITY DOES NOT APPLY IN THIS MATTER, AND THE PLAINTIFF HAS WHOLLY FAILED TO SUSTAIN HER BURDEN OF PROOF AS TO THE SAME**

The plaintiff attempts to save her negligent supervision claims against Chief Fusaro and the City of Norwich by arguing that she is within a foreseeable class of victims, and that the determination of whether the identifiable victim at imminent harm exception to the governmental immunity afforded the defendants presents a question of fact for the jury.  (See Pl.'s Opp. Summ. J. pp. 7-8.)  The plaintiff, however, wholly misstates the law regarding this exception to the doctrine of governmental immunity.

As a preliminary matter, the determination of whether the identifiable victim at imminent harm exception applies in a given matter so as to defeat governmental immunity may be determined as a matter of law.  See Doe v. Petersen, 279 Conn. 607, 903 A.2d 191 (2006); Violano v. Fernandez, 280 Conn. 310, 2006 WL 2872851 (2006).

In Doe, the Connecticut Supreme Court rejected the plaintiff's argument that a claimed issue of fact as to whether she fell within the identifiable victim subject to imminent harm exception precluded summary judgment, holding that:

> the issue of governmental immunity is simply a question of the existence of a duty of care, which is a question of law.  *Only* if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.

Id. (emphasis in original).  This exception to the immunity granted to a municipal employee is triggered only where the circumstances make it apparent to the employee that his or her failure to act would be likely to subject an identifiable person to imminent harm. See Doe, 279 Conn. at 616; Burns v. Board of Education, 228 Conn. 640, 645 (1994);  Sestito v. Groton, 178 Conn. 520, 528 (1979).

In Doe, the Connecticut Supreme Court set forth a three prong test for ascertaining whether the exception applied to a plaintiff's claim, and held that a plaintiff's failure to prove the applicability of each of the three prongs of the exception is insufficient to defeat the applicability of governmental immunity, and fatal to a plaintiff's claim that they came within the exception.  See Doe, 29 Conn. at 620-21; see also Violano, 2006 WL 28728521 *9.  Specifically, the Court held that, in order for the "identifiable person at imminent harm" exception to apply, three elements must be proven: (1) an imminent harm; (2) an identifiable victim; **and** (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.  See Doe, 279 Conn. at 616, 620.  Thus, to prevail under this exception, the plaintiff must prove that she was an identifiable person **and** was subject to imminent harm **and** that the defendants' conduct subjected her to that harm, despite the apparent likelihood of harm to her.  Id. at 620.  Demonstration of less that all three elements is insufficient for the exception to apply.  Id.

In the instant matter, the plaintiff wholly fails to prove any of the three elements of the exception required to trigger its applicability in this matter.  In fact, the plaintiff simply makes an unsupported blanket assertion that a foreseeable class of victims are female volunteers or operatives.  (See Pl.'s Opp. Summ. J., p. 8.)  The plaintiff further argues

17

that whether the defendants' purported failure to train and supervise Daigle triggered the exception is a question of fact.  (Id.)  Notably, the plaintiff does not contend that she is either an identified victim or within an identifiable class of persons as recognized by the prevailing law, that she was at imminent harm, or that it was apparent to chief Fusaro that his conduct subjected her to the very alleged harm that befell her.  Such failure by the plaintiff is fatal to her claim that the exception applies in this matter.  See Doe, 29 Conn. at 620-21; see also Violano, 2006 WL 28728521 *9.

The "identifiable person" and "imminent harm" elements must be evaluated with reference to each other.  See Doe, 279 Conn. at 620-21.  "An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm.  Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person."  Id. at 621.  It is impossible for one to be an identifiable person in the absence of any corresponding imminent harm.  Id.

First, the plaintiff was not an "identified person" to Chief Fusaro at the time of the incidents alleged.  The plaintiff has not alleged, nor produced any evidence, demonstrating that she was somehow identified, and specifically made known to Chief Fusaro as someone in imminent risk of harm of being photographed by Daigle at the time the incident occurred.  Similarly, there exists no allegation or evidence that Chief Fusaro was aware that the plaintiff was with Daigle on private property being photographed, or that she was observed by Chief Fusaro in the moments before she was photographed by Daigle.

Nor does the plaintiff fall within a narrowly defined class of foreseeable victims.  Rather, the Connecticut Supreme Court has re-affirmed that, to date, the only such

"class of foreseeable victims" recognized by the Supreme and Appellate Courts of our state are schoolchildren statutorily compelled to attend school during certain hours on school days.  See Prescott v. City of Meriden, 273 Conn. 759, 764 (2005).

Secondly, the plaintiff cannot establish that she was at imminent harm.  The test to be applied in determining the existence of imminent harm is whether there is a foreseeably dangerous condition which was limited in duration, i.e. temporary, and limited geographical scope.  See Purzycki v. Fairfield, 244 Conn. 101, 110, 708 A.2d 937 (1998).  The phrase "imminent" is defined as near at hand, on the point of happening, and something to happen upon the instant.  See Black's Law Dictionary, 514-15 (6th ed. 1991).  The risk of a harm which implicates a wide range of factors that can occur at some unspecified time in the future or not at all is insufficient to qualify as an "imminent harm."  See Evon v. Andrews, 211 Conn. 501, 508, 559 A.2d 1131 (1989); Doe, 279 Conn. at 621.

In the instant matter, the alleged harm to the plaintiff, namely the taking of nude/semi-nude photographs under the pretext of official police business implicates a wide range of factors which could have occurred at an unspecified time in the future or not at all.  For example, the plaintiff could have denied Daigle's requests for photographs, the plaintiff's mother could have arrived home early on the date of the sting operation thereby precluding the photo session, or Daigle's residence may not have been available for the second photo session.  Thus, the purported risk of harm implicates a wide range of factors which cannot be said to be imminent.  See Evon, 211 Conn. at 508.

Finally, the undisputed facts demonstrate that it was not apparent to Chief Fusaro that his alleged failure to train and supervise Daigle subjected the plaintiff to harm.  As indicated previously, Chief Fusaro had no prior knowledge of Daigle's photographing of female volunteers in underage alcohol sting operations.  Thus, it could not have been apparent to him that the plaintiff and/or female volunteers were at harm of being photographed by Daigle under the pretext of official police business.

Accordingly, the plaintiff has wholly failed to prove the applicability of the exception to her negligence claims against Chief Fusaro.  Her failure to prove any of the three prongs of the exception is fatal to her claim that the exception is applicable to her claims so as to defeat the governmental immunity afforded Chief Fusaro.  See Doe, 29 Conn. at 620-21; see also Violano, 2006 WL 28728521 *9.  Chief Fusaro is, therefore, entitled to judgment as a matter of law as to Count 16 of the Amended Complaint.

Moreover, in Pane v. Danbury, 267 Conn. 669 (2004), the Connecticut Supreme Court addressed the issue of whether any of the exceptions to the doctrine of governmental immunity was applicable to claims against a municipality itself. Specifically, the Court noted that the exceptions to the doctrine of governmental immunity applicable to the conduct of municipal employees are **not applicable** to claims against the municipality itself.  See Pane, 267 Conn. at 677, n.9.  Accordingly, the identifiable victim at imminent harm exception is not applicable to the plaintiff's negligence claims against the City of Norwich.  See id.  The City of Norwich is, therefore, entitled to judgment as a matter of law as to Count 15 of the Amended Complaint.

**IX.    AS A MATTER OF LAW, CONN. GEN. STAT. § 7-465 IS INAPPLICABLE IN THIS CASE BECAUSE DAIGLE WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AND HIS ACTIONS WERE INTENTIONAL**

The plaintiff argues the existence of a triable issue of fact with respect to her Conn. Gen. Stat. § 7-465 indemnification claim based upon her conclusory statement that a jury is required to determine whether Daigle was acting in the scope of his employment and/or whether his actions were willful or wanton.  (See Pl.'s Opp. Summ. J. pp. 18-19).

The Connecticut Superior Court in Skrobacz v. Sweeney, 49 Conn. Supp. 15, 88 A.2d 899 (2003) (White, J.) recently analyzed the meaning of the phrase "scope of employment" as applied within Conn. Gen. Stat. § 7-465.  The Honorable Gary J. White found:

> The traditional definition of "scope of employment" is: "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment . . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable."  (Citations omitted; internal quotation marks omitted.)  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 209-10, 579 A.2d 69 (1990).

Skrobacz v. Sweeney, 49 Conn. Supp. at 23, attached as **Exhibit H**.

Moreover, the Court need only look at the conduct alleged in the plaintiff's Complaint, not plaintiffs' conclusory theories of liability, to determine, as a matter of law, whether the conduct alleged is either willful or wanton.  See Logan v. Adams, 2005 WL 2277114 (2005) (Devlin J.), attached as **Exhibit I**.  The plaintiff's Complaint provides

that Daigle sexually exploited her under the pretext of standard police procedure, which is not only willful and wanton, but also, criminal.  See id. at *2.  In fact, the plaintiff explicitly alleges that Daigle's actions as set forth in her Complaint "were malicious, wanton and willful."  (See Amended Complaint, Counts 1-8, 11-28, 31-37, at ¶ 3.)

The plaintiff does not allege, nor does she set forth evidence, that Daigle's alleged prurient misconduct was also somehow serving a purpose of the City or furthering its interest.  Daigle's alleged conduct is plainly outside of the indemnification mandate of Conn. Gen. Stat. § 7-465 and, as such, no statutory liability for indemnification exists as a matter of law.

## X.   CONCLUSION

For the foregoing reasons, and those set forth in the defendants' Memorandum of Law in Support of Summary Judgment, the defendants are entitled to judgment as a matter of law as to Counts 15-34, and 37 of the Amended Complaint.

DEFENDANTS,
CITY OF NORWICH
AND LOUIS T. FUSARO


By     /s/ Beatrice S. Jordan
    Thomas R. Gerarde
    ct05640
    Beatrice S. Jordan
    ct22001
    Howd & Ludorf, LLC
    65 Wethersfield Avenue
    Hartford, CT  06114
    (860) 249-1361
    (860) 249-7665 (Fax)
    E-Mail:  tgerarde@hl-law.com
    E-Mail:  bjordan@hl-law.com

## <u>CERTIFICATION</u>

This is to certify that on October 31, 2006, a copy of the foregoing **Reply to Plaintiff's Objection to Motion for Summary Judgment** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


Stephen E. Reck, Esquire
Michael J. Cartier, Esquire
Mariani & Reck, LLC
83 Broad Street
New London, CT  06320

John R. Williams, Esquire
William & Pattis, LLC
51 Elm Street
New Haven, CT  06510

Eric P. Daigle, Esquire
Christine P. Plourde, Esquire
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103


        ____/s/ Beatrice S. Jordan_____
        Beatrice S. Jordan