Slip Copy, 2006 WL 1438649 (D.Conn.)
**(Cite as: Slip Copy)**

H

Briefs and Other Related Documents

Knight v. Hartford Police Dept.D.Conn.,2006.Only the Westlaw citation is currently available.

United States District Court,D. Connecticut.

Keith KNIGHT, Plaintiff,

v.

HARTFORD POLICE DEPARTMENT, City of Hartford, Joseph Croughwell, Deborah Barrows and Bruce Marquis, Defendants.

**No. 3:04CV969 (PCD).**

May 22, 2006.

Francis A. Miniter, Miniter & Associates, Hartford, CT, for Plaintiff.

Helen Apostolidis, Corporation Counsel's Office, Hartford, CT, for Defendants.

*RULING ON MOTION FOR SUMMARY JUDG-MENT & MOTION TO STRIKE*

DORSEY, J.

**\*1** Plaintiff Keith Knight initiated this action seeking redress for alleged racial discrimination and retaliation in violation of 42 U.S.C. § 1983 and of Plaintiff's right to equal protection pursuant to the Fourteenth Amendment to the Constitution of the United States. Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all three counts of Plaintiff's Amended Complaint on the basis that there are no material facts in dispute and that they are entitled to judgment as a matter of law. For the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. No. 36] will be granted. Defendants also move to strike portions of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. For the reasons that follow, Defendants' Motion to Strike [Doc. No. 53] will be granted in part and denied in part.

I. MOTION TO STRIKE

Defendants move to strike certain portions of Plaintiff's Opposition to Defendants' Motion for Summary Judgment [Doc. No. 43], arguing that (1) some exhibits to Plaintiff's Affidavit are inadmissible

hearsay and as such, may not be used to oppose Defendants' Motion for Summary Judgment; (2) portions of Plaintiff's Affidavit are not based on personal knowledge, but on information and belief or on conjecture and conclusory allegations; and (3) many of Plaintiff's responses to the factual assertions set forth in Defendants' Rule 26(a)(1) Statement are not supported by specific cites to admissible evidence or deposition testimony or are unresponsive. Plaintiff did not file an Opposition to Defendants' Motion to Strike.

Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Moreover, the Second Circuit has repeatedly recognized that "under Rule 56(e), only admissible evidence may be used to resist a motion for summary judgment." *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 218 n. 6 (2d Cir.2000); *accord Kader v. Paper Software, Inc.,* 111 F.3d 337, 342-43 (2d Cir.1997); *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997).

A. Exhibits A and C to Plaintiff's Affidavit

Although the party opposing a summary judgment motion need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment," *Celotex Corp.,* 477 U.S. at 324-24, the moving party can "challenge documentary evidence that has not been properly authenticated" by filing a motion to strike. *Keene v. Hartford Hosp., et al.,* 208 F.Supp.2d 238, 242 (D.Conn.2002) (citing *Dedyo v. Baker Eng'g N.Y., Inc.,* 1998 U.S. Dist. LEXIS 132, 1998 WL 9376, at \*4 (S.D.N.Y. Jan.13, 1998)). Exhibit A to Plaintiff's Affidavit consists of a series of charts purporting to provide the minority breakdown in the Hartford Police Department. The charts, however, are not authenticated in any way, nor is the source of the information stated therein or its author identified. Defendants argue that the charts

should be stricken from the record as inadmissible hearsay. Plaintiff states in his Affidavit, however, that he "ha[s] maintained records" on which the charts in Exhibit A are based. *See* Pl's Aff. ¶ 8. Although the records on which the charts are based would need to be offered as evidence at trial, the charts will be allowed as part of the record on summary judgment.

**\*2** Similarly, Exhibit C to Plaintiff's Affidavit contains an excerpt from a report by Carroll Buracker & Associates, Inc. Defendants argue that the excerpt not only constitutes inadmissible hearsay, but contains multiple levels of hearsay and should be stricken from the record. The report, on its face, indicates that it was prepared for the Hartford Police Department and based on data provided by the City of Hartford and the Hartford Police Department. *See* Pl's Aff., Exh. C (stating "Data derived from City and Police Department personnel records"). Although the report may not be admissible at trial without a proper foundation, it is appropriate for consideration on summary judgment and will not be stricken from the record.

### B. Plaintiff's Affidavit

It is well-established that courts may strike testimony which is not made on the basis of personal knowledge from consideration on summary judgment. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988); *Keene,* 208 F.Supp.2d at 242-44 (striking portions of affidavit in opposition to summary judgment where affiant failed to establish personal knowledge). Defendants argue that the portions of Plaintiff's Affidavit not made on the basis of personal knowledge should be stricken from the record. Specifically, Defendants challenge paragraphs 5, 6, 8, 14 through 19 and 26 through 37 of Plaintiff's Affidavit. *See* Defs' Mem. Supp. Mot. Strike at 4-16.

Defendants challenge paragraphs 5, 6, 8, 14, 15, 16, 18, 19, 27, 28, 29, 30, 31 and 32 on the basis that they are simply "a general recitation of the allegations of the Amended Complaint, and not a recitation of specific, admissible facts designed to prove those allegations." *See* Defs' Mem. Supp. Mot. Strike at 5-16. Moreover, Defendants challenge paragraphs 14, 16, 17, 18, 19 and 26 on the basis that they are "not

based on [Plaintiff's] own personal knowledge," and/or based on "information and belief," and/or "comment on others' state of mind or knowledge." *Id.* Finally, in paragraphs 33 through 37 of Plaintiff's Affidavit, he discusses the 1976 and 1985 Captain's lists, the 1975 and 1982 Sergeant's lists, the 1987 and 1994 Assistant Chief's lists, the 1981 Major's list and the 1976 Lieutenant's list, purporting to explain why said lists were not extended. Defendants challenge these paragraphs of Plaintiff's Affidavit on the basis that they are "not based on [Plaintiff's] own personal knowledge" and that Plaintiff "cannot speak to some unidentified person's state of mind and his or her reason(s) for not extending a promotional list." *Id.* at 14-16. With respect to the 1976 Captain's list and the 1976 Lieutenant's list, Defendants also argue that the statements regarding those lists are "not based on [Plaintiff's] own personal knowledge, as he was not even employed by the Hartford Police Department in 1976." *Id.* at 15.

Defendants properly challenge those statements based "on information and belief." As it is clear that such statements are not based on Plaintiff's personal knowledge, the sentence in paragraph 14 and the phrases in paragraphs 16, 17 and 19 based on information and belief are hereby stricken from the record.FN1

> FN1. The relevant sentence in paragraph 14 reads: "On information and belief, this letter and the information it contained in it was within the knowledge of Defendants Croughwell and Acting Chief Debbie Barrows." The relevant portion of paragraph 16 reads: "... on information and belief, tried to prevent the information in the letter from becoming known." The relevant portion of paragraph 17 reads: "... on information and belief, minority officer's [sic] score less well on this test than do white officers." Finally, the relevant portion of paragraph 19 reads: "... on information and belief, the biases inherent in the prior written examinations and oral examinations were not corrected for such examination."

**\*3** Defendants also challenge those portions of the af-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fidavit that they contend contradicts Plaintiff's deposition testimony, namely a portion of paragraph 14 and the entire paragraph 32. *See* Defs' Mem. Supp. Mot. Strike at 7, 13-14. It is well-established in the Second Circuit that "a party may not create material issues of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Raskin, 125 F.3d at 63* (citing *Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir.1996)).* The challenged portion of paragraph 14 was already stricken from the record on the ground that it was based on information and belief and accordingly, need not be examined on this basis. Paragraph 32 of Plaintiff's Affidavit reads:

In furtherance of this conspiracy, Defendants Croughwell, Barrows and Marquis knowingly acted in common purpose, i.e., to keep in place methods of examination known to be racially biased and to prevent the information contained in the October 27, 1999 letter from becoming known. Defendants in fact did keep the January 6, 2000 letter from becoming known until the moving papers were filed. The unwillingness to publish the letter, to invalidate the [1999] examination and reexamine the participants with a neutrally biased examination document, and the unwillingness to public the problem all evidence the intent to allow biased examination results to affect promotions in the Department.

Pl's Aff. ¶ 32. Defendants challenge this assertion on the basis that Plaintiff is simply making assumptions despite testifying at his deposition that he has no evidence that any of these three defendants ever saw the letter in question. *See* Defs' Mem. Supp. Mot. Strike at 14 (citing Pl's Depo. at 31-33). Plaintiff, at his deposition, admitted that he did not "know for a fact" whether Susan Comstock shared the letter in question with anyone or whether anyone ever shared the letter with Chief Croughwell, acting Chief Barrows or Chief Marquis. *See* Pl's Depo. at 31-33. Plaintiff does testify that he "spoke to Chief Marquis about [the letter]," however, he admits that he "did not share the letter with him." *Id.* at 32. Moreover, Plaintiff asserts in paragraph 16 of his Affidavit that these Defendants, "on information and belief, tried to prevent the information in the letter from becoming

known." Accordingly, this Court will strike from the record the portion of paragraph 32 of Plaintiff's Affidavit that reads: "to prevent the information contained in the October 27, 1999 letter from becoming known." The remainder of that paragraph will stand.

As to the remainder of Plaintiff's Affidavit, although the information asserted therein may be subject to serious question, Plaintiff asserts, in paragraph 2 of the Affidavit, that he has "personal knowledge of the facts set forth herein, except to the extent that statements may be explicitly declared to be made on the basis of information and belief." Pl's Aff. ¶ 2. The Second Circuit has clearly established that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (quoting *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997)). Since Plaintiff represents that he possesses personal knowledge of the facts set forth in his affidavit, those assertions not explicitly based on information and belief will be credited as evidence for purposes of summary judgment and will not be stricken from this record. [FN2]

> [FN2.] Although the facts set forth in Plaintiff's Affidavit will be credited for purposes of this motion for summary judgment, many of the assertions could be objected to at trial on the basis of foundation.

C. Plaintiff's Responses to Defendants' Rule 56(a)(1) Statement

**\*4** Local Rule 56(a)(3) requires the party opposing a motion for summary judgment to follow each denial in their Rule 56(a)(2) Statement "by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. Loc. Civ. R. 56(a)(3). When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted. *See SEC v. Global Telecom Servs. L.L.C.,* 325 F.Supp.2d 94, 109 (D.Conn.2004) ("*Fed.R.Civ.P. 56* does not impose an obligation on a district court to perform an independent review of the record to find proof of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

factual dispute."); _Root v. Liston,_ 363 F.Supp.2d 190, 191 n. 1 (D.Conn.2005); _Martin v. Town of Westport,_ 329 F.Supp.2d 318, 323 n. 1 (D.Conn.2004).

Defendants, in their Motion to Strike, take issue with several of Plaintiff's responses to the material facts set forth in its Rule 56(a)(1) Statement and assert that because such responses are inadequate, the material facts to which they respond should be deemed admitted. _See_ Defs' Mot. Strike at 1-3. Defendants first take issue with Plaintiff's "denial" of the material facts set forth in paragraph number 3, in which Plaintiff "admits that the current Rule may be read as follows, but asserts that in practice the Police Chief exercised the discretion to extend lists or not or to promote in the absence of a vacancy." _See_ Pls' Rule 56(a)(2) Statement ¶ 3. Plaintiff cites to his affidavit and to the affidavit of Daryl Roberts in support of his contention, however, Defendants argue that Plaintiff relies only on "conclusory allegations and/or inadmissible evidence." Defs' Mot. Strike at 1. Because Plaintiff appropriately cites to two affidavits, however, his statement is permitted and will not be stricken.

Plaintiff's responses to statement numbers 9, 10, 11, 13, 14, 38, 42, 43 and 44 do not adequately deny the material facts set forth therein. Specifically, Plaintiff states in these paragraphs only that he "has no knowledge" pertaining to or "disagrees with" the statement at issue. _Id._ ¶¶ 9-11, 13, 14, 38, 42-44. Moreover, these "denials" are not accompanied by either a specific citation to the affidavit of a witness who would be competent to testify as to the facts at trial and/or evidence that would be admissible at trial as required by Local Rule 56(a)(2)-(3). Accordingly, because plaintiff has not denied these assertions of fact and has offered no evidence to dispute their accuracy, the material facts asserted in paragraphs 9, 10, 11, 13, 14, 38, 42, 43 and 44 of Defendants' Rule 56(a)(1) Statement will be accepted as undisputed. _See_ Local Rule 56(a)(1) ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)."); _see also Walton v. Connecticut,_ No. 3:03cv2262 (JBA), 2006 U.S. Dist. LEXIS 9874, at *6 n. 3 (D.Conn. Mar. 2, 2006) (deeming admitted

material facts set forth by the defendant when plaintiff offered no evidence to counter defendant's facts but merely claimed insufficient knowledge to respond). Plaintiff's statement in response to paragraph 10 that "Panelists were consistently white by race" and his full response to paragraph 14 are both supported by a citation to his affidavit and will not be stricken from the record. _See_ Pl's Rule 56(a)(2) Statement ¶¶ 10, 14. His responses to paragraphs 9, 11, 13, 38, 42, 43 and 44 are as not supported and will be stricken from the record. _See id._ ¶¶ 9, 11, 13, 38, 42-44.

**\*5** Defendants also argue that Plaintiff's responses to the material facts set forth in paragraphs 61 and 62 should be stricken for the same reasons. Plaintiff responds to these statements slightly differently. Although it is clear that he "has no knowledge" pertaining to some of the facts asserted in the statement, his disagreement with Defendants' contention that the 2003 written examination was different from those administered in 1999 and 1995 is based on his own observation. Because Plaintiff appropriately cites to his own affidavit to support his statement, his response on that basis is allowed and that statement in both paragraphs is not admitted. FN3 The remainder of the material facts set forth in paragraphs 61 and 62 of Defendants' Rule 56(a)(1) Statement are deemed admitted on the ground that Plaintiff has offered no evidence in opposition. _See Walton,_ 2006 U.S. Dist. LEXIS 9874 at *6 n. 3.

> FN3. Specifically, the statement in paragraph 61 that "[t]he written examination was thus different from the one administered in the 1999 promotional process and different from the one administered in the 1995 police sergeant promotional process" and the statement in paragraph 62 that "[t]he oral examination was thus different from the one administered in the 1999 promotional process and different from the one administered in the 1995 police sergeant promotional process" are both not admitted. Pl's Rule 56(a)(2) Statement ¶¶ 61, 62.

Defendants argue that Plaintiff's responses to the factual assertions in paragraphs 18, 19, 27, 31 and 32 are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not responsive to the facts asserted therein. Defendants are correct. Plaintiff's responses to those paragraphs are not responsive to the factual assertions set forth therein. As such, the factual assertions in paragraphs 18, 19, 27, 31 and 32 shall be deemed admitted. Because Plaintiff's responses are supported by evidence, however, they will not be stricken from the record.

Defendants also move to strike Plaintiff's statements following his admission of paragraphs 20 and 23 on the ground that the statements seek to modify Plaintiff's prior deposition testimony. *See* Defs' Mem. Supp. Mot. Strike at 18 (citing Pl's Depo. at 44, 10-15). As stated above, "a party may not create material issues of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Raskin*, 125 F.3d at 63. Similarly, a party may not create material issues of fact by submitting a response to factual assertions in a Rule 56(a)(1) Statement that contradicts prior deposition testimony. In response to Defendants' assertion that "Joseph Croughwell had nothing to do with Keith Knight's score on the 1995 police sergeant promotional examination," Plaintiff writes that he "admits that he has no evidence that Mr. Croughwell was personally involved in the grading of the examination." *See* Pl's Rule 56(a)(2) Statement ¶ 20. In Plaintiff's deposition, however, he testified that he is "not saying that" in response to the question whether he is "claiming in this lawsuit that Chief Croughwell had anything to do with [his] scores on the 1995 promotional examination." *See* Pl's Depo. at 44, attached to Defs' Rule 56(a)(1) Statement at Exh. A. In light of Plaintiff's deposition testimony, this Court will strike his response to Defendants' factual assertion in paragraph 20 and deem Defendants' factual assertion admitted.

In response to Defendants' assertion that Plaintiff "does not have any evidence of racial bias in the 1995 police sergeant written examination, nor does he claim there was something wrong with the actual test itself," Plaintiff writes that he "disagrees since the 1995 and 1999 promotional exams were very similar in form and content and the 1999 written examination was found by Defendants' agent to have an

adverse affect [sic] on minorities." *See* Pl's Rule 56(a)(2) Statement ¶ 23 (citing Pl's Aff. ¶¶ 15, 19; Comstock Aff. at Exh. 2). Although Plaintiff testified in his deposition that he has no written evidence that there was racial prejudice in the 1995 written examination, *see* Pl's Depo. at 10, the Court does not find the deposition testimony cited by Defendants to be directly contradictory to Plaintiff's response in paragraph 23. As such, the response will not be stricken.

**\*6** Defendants also move to strike Plaintiff's response to the material facts set forth in paragraph 41 on the ground that Plaintiff's response "cites no evidence at all." Contrary to Defendants' contention, however, Plaintiff's response quotes and cites to the October 27, 1999 letter from Bruce Davey and Associates to Susan Comstock, attached as Exhibit 2 to the Affidavit of Susan Comstock. As such, Plaintiff's response to paragraph 41 will stand.

Defendants move to strike Plaintiff's responses to paragraphs 76, 77 and 78 of Defendants' Rule 56(a)(1) Statement on the grounds that the responses are "neither an admission nor a denial" and are "not responsive to the facts asserted by the defendants." Defs' Mem. Supp. Mot. Strike at 19. Defendants are correct that Plaintiff's responses thereto are not admissions nor denials and are not responsive to the facts asserted and as such, the factual assertions set forth in paragraphs 76, 77 and 78 are deemed admitted. The last sentence of Plaintiff's response to paragraph 76 is properly supported by a citation to two affidavits and will not be stricken. The rest of the response, however, is not properly supported and will be stricken. Plaintiff's responses to paragraphs 77 and 78 also are not properly supported and will be stricken.

Defendants also move to strike Plaintiff's statements generally saying that "[t]he list was not extended because all vacancies were filled"-following his admission of paragraphs 85, 86, 91, 93, 94, 95, 98 and 104 on the ground that such statements are not "supported by either a specific citation to the affidavit of a witness competent to testify as to the facts at trial and/or evidence that would be admissible at trial." Defs' Rule 56(a)(2) Statement at 20-21. Plaintiff, however, properly cites to his affidavit. As this Court already

Slip Copy, 2006 WL 1438649 (D.Conn.)
**(Cite as: Slip Copy)**

determined that those portions of Plaintiff's Affidavit would stand, Plaintiff's statements in response to Defendants' factual assertions also will not be stricken.

Finally, Defendants challenge Plaintiff's statement in response to paragraph 97-i.e., that "[t]he [1998] list was extended twice for another 6 months each time until vacancies opened up due to retirements. This list should have expired but Acting Chief Deborah Barrows extended the list upon request"-on the ground that the statement is inconsistent with the affidavit testimony to which it cites. *See* Pl's Rule 56(a)(2) Statement ¶ 97 (citing Buyak Aff. ¶ 3). Defendants' are correct that paragraph 3 of the Buyak Affidavit FN4 does not support Plaintiff's assertion and as such, the Court will strike the two sentences challenged from the record.

> FN4. Paragraph 3 of the Buyak Affidavit reads: "I personally know of a situation where a list for the rank of captain was extended for two times. This occurred in or about 2001. The Captain's List was extended for two six month periods after already being certified for the two previous years. Previously, most requests for promotional lists were granted for a period of one year, not two six month periods. I was promoted to the rank of Captain from that list."

For the reasons set forth above, the material facts set forth in paragraphs 9, 10, 11, 13, 14, 18, 19, 27, 31, 32, 38, 42, 43, 44, 76, 77 and 78 and a portion of paragraphs 61 and 62 of Defendants' Rule 56(a)(1) Statement will be admitted, however, the Court notes its continued adherence to the Second Circuit's admonition that "it is incumbent upon a court in a discrimination case to examine 'the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)) (citation omitted); *see* *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 382 (2d Cir.2001) (noting that in evaluating the merits of a Title VII case, the task is "to examine the

entire record and, in accordance with *Reeves,* make the case-specific assessment as to whether a finding of discrimination may reasonably be made"); *but see* *Meira v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) (holding that "[t]he salutary purposes of summary judgment-avoiding protracted, expensive and harassing jury trials-apply no less to discrimination cases than to commercial or other areas of litigation).

## II. BACKGROUND FN5

> FN5. The statement of facts that follows is derived primarily from Plaintiffs' Complaint and the parties' Local Rule 56 statements and is supplemented, where necessary, by the parties' briefs. To the extent necessary, the facts will be addressed in more detail in the discussion that follows.

**\*7** Plaintiff Keith Knight, a black male, is a resident of the Town of Bloomfield and the State of Connecticut and has been continuously employed by the Hartford Police Department since 1982. Am. Compl. ¶ 3. Individual Defendants Joseph Croughwell, Deborah Barrows and Bruce Marquis are all former Chiefs of Police for the Hartford Police Department who allegedly were responsible for overseeing and/or had knowledge of and/or took part in the actions of which Plaintiff complains. FN6 *Id.* ¶ 4.

> FN6. Joseph Croughwell was appointed police chief on January 3, 1994 and served in that capacity until he was incapacitated by a work-related injury on or about June 8, 1999, at which time he went on leave and subsequently retired. Pl's Rule 56(a)(2) Statement ¶ 79. Deborah Barrows served as acting police chief from June 8, 1999 until July 17, 2000, at which point Robert Rudewicz was appointed acting police chief. *Id.* ¶ 80. Bruce Marquis was appointed police chief on December 4, 2000 and served in that capacity until December 31, 2003. *Id.* ¶ 81.

Plaintiff graduated from the State of Connecticut Police Academy in May of 1982 and thereafter joined the Hartford Police Department as a police officer,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

where he has remained employed for the past twenty-three years. *Id.* ¶ 5; Pl's Mem. Opp. Mot. Summ. J. at 2. Plaintiff contends that he "repeatedly and continuously sought promotion to the ranks of Sergeant and Lieutenant," continuing "without abatement" since he joined the department. Am. Compl. ¶ 5. Plaintiff also asserts that he has an "unblemished record" and "has received numerous awards and commendations for conduct in the course of his duties as a Hartford Police Officer." *Id.* ¶ 27; *see also* Pl's Aff. ¶ 24. Moreover, Plaintiff asserts that throughout his career with the Hartford Police Department, he has "advocated for equal treatment of minority police officers as well as white officers by the Hartford Police Department and for said Department to honor its obligations under *Cintron v. Vaughn.*" Am. Compl. ¶ 29; Pl's Aff. ¶ 26 (listing examples of Plaintiff's "various actions in defiance of discrimination"). Plaintiff contends that "this advocacy has been viewed as threatening to those in power, including Defendants Croughwell, Barrows and Marquis and instigated them to seek to keep [him] from being promoted." Am. Compl. ¶ 29.

The Hartford Police Department's promotion practices were previously challenged in *Cintron v. Vaughn,* Docket No. 13,578 (D. Conn. June 21, 1973), a 1969 federal class action discrimination suit brought on behalf of minority residents of Hartford against several city officials, including the chief of police and the city manager. The *Cintron* plaintiffs sought relief for alleged constitutional improprieties in the operation of the Hartford Police Department and the case was eventually resolved by a consent decree approved by the Connecticut District Court in 1973. *See* *Cintron v. Vaughn, No. 3:69-cv-13578, 2000 WL 620427, at *1 (D.Conn. Mar.15, 2000).* Plaintiff contends that the consent decree mandated the appointment and promotion of minority employees in the Hartford Police Department. Am. Compl. ¶ 13. As noted in the Ruling on Defendants' Motion to Dismiss, however, Plaintiff has indicated that he is not pursuing a claim that the consent decree was violated. *See* Rul. Mot. Dismiss at 7.

Certain facts are admitted. Promotions within City of Hartford departments are made, in accordance with the City of Hartford Personnel Rules and Regula-

tions, on the basis of merit and fitness, as ascertained by competitive examination. Pl's Rule 56(a)(2) Statement ¶ 1. After the candidates for promotion have completed an examination, an eligibility list containing the names of candidates who have successfully completed the exam, in order of their final earned rating, is established. *Id.* ¶ 2. That "promotional eligibility list" generally remains in effect for two years from the date on which it is established. *Id.* Rule VII of the City of Hartford Personnel Rules and Regulations provides that the Personnel Director may, with the approval of the Personnel Board, extend a promotional eligibility list for up to one year. *Id.* ¶ 3. Plaintiff contends, however, that, in practice, the Police Chief exercised the discretion to extend or not to extend eligibility lists or to promote or not to promote in the absence of a vacancy. *Id.* When promotional vacancies do occur within a City of Hartford department, the Director of Personnel certifies to the department head names of eligible employees from the eligibility list, always certifying, if available, two more names than the number of existing vacancies. *Id.* ¶ 4. The department head is then authorized to make appointments from the list certified by the Director of Personnel. *Id.*

**\*8** Promotional examinations for the rank of police sergeant were announced in October of 1994, April of 1999 and November of 2003. *Id.* ¶¶ 5, 33, 59. All three examinations consisted of a written part, weighted forty-nine percent of the final score, and an oral part, weighted fifty-one percent of the final score. *Id.* ¶¶ 6, 34, 60.

The written portion of the 1995 examination was rented from the International Personnel Management Association ("IPMA") and was supported by a content validity study and psychometric analysis. *Id.* ¶ 7. The 1999 promotional examination was developed, administered and validated by Bruce Davey and Associates, a professional testing firm. *Id.* ¶ 35. Consultants, aided by staff from the Personnel Department, compiled the questions for the 2003 exam. *Id.* ¶ 61. Neither IPMA nor Bruce Davey and Associates was involved in any way with the 2003 written examination. *Id.* Plaintiff contends, however, that the form and content of the 2003 written examination, as observed by him during testing, appeared to be similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to that of the 1995 and 1999 examinations. *Id.* The written questions for the 1995 and 1999 examinations were based on a reading list which was provided to the candidates prior to the examination, with adequate study time. *Id.* ¶¶ 7, 35. For all three examinations, candidates participated in and were scored anonymously on the written examination. *Id.* ¶¶ 39, 63.

The oral part of the 1995 examination was prepared by staff from the City of Hartford Personnel Department with assistance from the oral panelists, none of whom were affiliated in any way with the City of Hartford. *Id.* ¶ 8. The City of Hartford Personnel Department staff trained the oral panelists, having them participate in mock panels and rate mock candidates. *Id.* ¶ 11. The Personnel Department staff did not instruct panelists for the 1995 or 1999 oral examinations on how to rate particular candidates or groups of candidates. *Id.* ¶ 10, 38. The panels for the oral portion of the 1995 FN7 and 1999 FN8 sergeant examinations were made up of police officers from around the State of Connecticut, none of whom were employed by or affiliated with the City of Hartford. *Id.* ¶¶ 12, 37. After the panelists for the 1995 examination took part in a mock panel, they were grouped into three groups based on their rating styles: generous, strict and average. *Id.* ¶ 13. A panelist from each of the three groups was assigned to each oral panel in order to ensure balance in rating. *Id.* Moreover, the Personnel Department made an effort to diversify the panels on racial and ethnic grounds so that no panel would be all-white or all-black. *Id.* Defendants assert that to the extent possible, each candidate appeared before an oral panel which was representative of his or her racial/ethnic group and balanced in rating style. *Id.*

> FN7. The panelists for the 1995 sergeant examination were: Lieutenant Paul Samuels of the Connecticut State Police; Sergeant Carlos Gil of the Central Connecticut State University Police Department; Lieutenant Richard Arsenault of the Shelton Police Department; Lieutenant Darren Ouellette of the New Britain Police Department; Lieutenant Nelson Kearney of the Bridgeport Police Department; Lieutenant Clifford Spinner of the Willimantic Police Department; Lieuten-

ant Lester McKoy of the Stamford Police Department; Sergeant Aida Remele of the Bridgeport Police Department; Lieutenant Samuel Beamon of the Waterbury Police Department; Lieutenant James Merrithew of the North Haven Police Department; Lieutenant Gregory Sneed of the Middletown Police Department; and Lieutenant Anjo Timmerman of the Enfield Police Department.

> FN8. The oral examiners were: Sergeant Willie Miller of the Wethersfield Police Department, a black male; Lieutenant Robert Craw, Jr. of the Bridgeport Police Department, a white male; Sergeant Karen Polhemu of the State Police, Troop E, a white female; Lieutenant Benjamin Chamble of the State Police, Troop A, a white male; Sergeant Liam Pesce of the Waterbury Police Department, a white male; Captain Edward Cass of the New Britain Police Department, a white male; Lieutenant Steven Fields of the State Police, Troop F, a black male; Captain Douglas J. Moran of the Waterbury Police Department, a white male; and Sergeant Edwin Villanueva of the Manchester Police Department, a hispanic male. Pl's Rule 56(a)(2) Statement ¶ 37.

For the 1995 examination, Plaintiff received a written score of 78.000 and an oral score of 84.1667, for a combined score of 81.145, which placed him fifty-fourth on the promotion eligibility list. *Id.* ¶ 17. Although it is admitted that Plaintiff's exam papers from the 1995 exam do not reflect any changes or erasures to the scores given by the oral panelists and that the final scores Plaintiff received were those given by the oral panelists, Plaintiff contends that the panelists scored his responses to the oral examination on pieces of scrap paper prior to giving Plaintiff a final grade and that he later observed that the scrap papers contained scores that were crossed out. *See id.* ¶ 18; Knight Aff. ¶ 17. It is admitted, however, that aside from Plaintiff's assertion that he "saw scraps of paper from the panelists with numbers crossed out," he has no evidence that the scores he received from the oral panelists on the 1995 exam were not an honest as-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1438649 (D.Conn.)
(Cite as: Slip Copy)

Case 3:02-cv-01026-CFD     Document 113-2     Filed 10/31/2006     Page 9 of 23
Page 9

sessment of his performance on that exam. Pl's Rule 56(a)(2) Statement ¶ 19.

**\*9** Pursuant to certification lists provided to the Hartford Police Department on May 31, 1995, September 12, 1995, July 18, 1996 and August 1, 1996, the eligibles ranked one through twenty-eight and thirty-two through thirty-seven were promoted to the rank of captain. *Id.* ¶¶ 24-25. A certification list was again provided to the Hartford Police Department on May 8, 1997, this one containing the names of eligibles ranked through forty-six. Defendants maintain that there were nine vacancies to be filled and that the eligibles ranked thirty-five and thirty-eight through forty-five were promoted. *Id.* ¶ 27. Plaintiff contends that the list provided should have contained the names of eligibles ranked thirty-eight through fifty-four because there were eighteen, rather than nine, vacancies. FN9 *Id.* (citing Knight Aff. ¶¶ 10, 12). Moreover, Plaintiff contends that the eligible ranking twenty-nine retired on September 20, 1996, thus creating another vacancy. *Id.* The eligibles ranking forty-six, forty-seven, fifty through fifty-three and fifty-five were white; those ranking forty-eight and forty-nine were Hispanic; and the eligible ranking fifty-four (Plaintiff) was black. *Id.* ¶¶ 28-30.

> FN9. The Weekly Status Reports dated May 5 and May 19, 1997-attached as Exhibit A to the Kenton Affidavit-indicate that eighteen vacancies existed for the position of Sergeant. *See* Pl's Mem. Supp. Mot. Summ. J. at 7.

For the 1999 examination, Plaintiff received a score of 73.9583 on the oral examination and 73.1579 on the written examination, for a combined score of 73.5661, placing him fifty-ninth on the eligibility list. Pl's Rule 56(a)(2) Statement ¶ 49. Plaintiff has no evidence suggesting that these scores were not an honest assessment of his performance on the examination and has no evidence of any erasures or changes on the answer sheet of his 1999 written examination. *Id.* ¶¶ 50-51. On January 4, 2000, the Director of Personnel established an eligibility list which was set to expire on January 4, 2002, but was extended for an additional year by the Personnel Board, thus expiring on January 4, 2003. *Id.* ¶ 46. Certification lists were

provided to the Hartford Police Department on January 4, 2000, January 29, 2001, July 10, 2002 and December 6, 2002, pursuant to which the eligibles ranked one through twenty-five, twenty-eight, thirty and thirty-one were promoted to the rank of captain. FN10 *Id.* ¶¶ 57-58.

> FN10. The eligible ranked twenty-seven retired on March 21, 2001. Pl's Rule 56(a)(2) Statement ¶ 57.

Following the 1999 written examination, Bruce Davey, of Bruce Davey and Associates, reported to Susan Comstock that the test results showed an adverse impact on black and Hispanic candidates, but concluded that "the results are defensible based on the test's validity." *Id.* ¶ 41 (citing Comstock Aff. ¶ 12; Oct. 27, 1999 letter from Bruce Davey and Associates). In or about December 1999, Susan Comstock became aware that Attorney Sydney Schulman, on behalf of the plaintiffs in *Cintron v. Vaughan,* Docket No. 13,578 (D. Conn. June 21, 1973), had questioned the validity of the written police sergeant promotional examination. *Id.* ¶ 42. Ms. Comstock provided a copy of Mr. Davey's November 1, 1999 communication to the Office of Corporation Counsel, which forwarded said communication to Attorney Schulman on or about December 29, 1999. *Id.* Ms. Comstock also directed Mr. Davey to respond to Attorney Schulman's questions and concerns. *Id.* ¶ 43. In a letter dated January 6, 2000, Mr. Davey responded, in great detail, to Attorney Schulman's questions and concerns and reaffirmed the validity of the 1999 written examination. *Id.* ¶ 44; Exh. 3 to Comstock Aff.

**\*10** Plaintiff also contends that in 2000, while Defendants Croughwell and Marquis were serving as Police Chiefs, Carroll Buracker and Associates conducted a Comprehensive Management Study of the Hartford Police Department. *See* Am. Compl. ¶ 19; Pl's Aff. at Exh. C. Plaintiff maintains that the Summary Recommendations from that study report "problems" with the oral examinations of officers for promotion and make recommendations for improvement. Am. Compl. ¶ 19; *see also* Pl's Aff. at Exh. C. Plaintiff contends that said recommendations have not been implemented. Am. Compl. ¶ 19.

Plaintiff took the 2003 police sergeant examination and received a score of 79.1667 on the oral examination and 77.0000 on the written examination, for a combined score of 78.1050, placing him fifty-fifth on the eligibility list. *Id.* ¶ 69. Plaintiff has no evidence suggesting that these scores were not an honest assessment of his performance on the examination. *Id.* ¶ 72. An eligibility list for the position of Police Sergeant was established by the Director of Personnel on February 27, 2004 and scheduled to expire on February 27, 2006. *Id.* ¶ 65. Although Godfred Ansah, a Personnel Administrator for the City of Hartford, asserts that the 2003 examination was different from the ones administered in 1999 and 1995, *see* Ansah Aff. ¶¶ 6-7, Plaintiff asserts that Defendant Marquis "made no attempt to provide a neutral exam, other than the termination of the services of Davey and Associates and the use of an untested examination...." Pl's Mem. Supp. Mot. Summ. J. at 12.

Plaintiff maintains that he has been doing the work ordinarily assigned to a police captain since 2000 and that white officers working above their grade for six months or more have typically been compensated for and promoted to the grade in which they are actually working. Plaintiff contends that this same "policy" has not been applied to him. *Id.* at 12-13 (citing Pl's Aff. ¶ 24). In his Affidavit, Daryl Roberts, the Deputy Chief of Police for the Hartford Police Department, asserts that he "know[s] of instances in which a person has served in a position, in which a person having a higher rank usually serves, for a year or more and then been promoted to the level of that position, and this has been done without examination. Keith Knight has now served for a number of years in a position usually occupied by an officer of rank of Lieutenant or higher." Roberts Aff. ¶ 6.

### III. SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c).* No

genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 69, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." *Delaware & H.R. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990).

*11 The moving party bears the burden of establishing that summary judgment is appropriate, *Anderson, 477 U.S. at 255,* however, when moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing that there is no genuine issue of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).* "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.' ' *Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 111 (2d Cir.2001) (quoting *Celotex, 477 U.S. at 324*); *see also Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223-24 (2d Cir.1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). The non-moving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing

Slip Copy
Slip Copy, 2006 WL 1438649 (D.Conn.)
(Cite as: Slip Copy)

Page 11

the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of N.Y.,* 72 F.3d 1051, 1060 (2d Cir.1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading ." Fed.R.Civ.P. 56(e).

Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996). "If reasonable minds could differ as to the import of the evidence ... and if ... there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir.1997) (internal citations omitted); *see also Matsushita,* 475 U.S. at 586 ("some metaphysical doubt as to the material facts" is insufficient for summary judgment); *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## B. Discussion

*12 Plaintiff's claims against Defendants appear in a six-count Amended Complaint. Three of the six counts remain after this Court dismissed Counts Two, Four and Six in the November 1, 2004 Ruling on Defendants' Motion to Dismiss. *See* Nov. 1, 2004 Ruling [Doc. No. 15]. Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourteenth Amendment rights by retaliating against him by deliberately placing him low on the promotion lists ("Count One") and by using racially biased examinations and terminating the promotion lists in a racially-motivated way ("Count Three"). Am. Compl. ¶¶ 31, 34-35. Moreover, Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by using and relying on examinations known to be ra-

cially biased ("Count Five"). *Id.* ¶¶ 39-40.

### 1. Statute of Limitations

Defendants argue that Plaintiff's Amended Complaint, to the extent it is predicated on events occurring prior to June 15, 2001, is time-barred. *See* Defs' Mem. Supp. Mot. Summ. J. at 4-6. As found in this Court's Ruling on the Motion to Dismiss, the applicable limitation period is three years from the date of the act or omission complained of. *See* Conn. Gen.Stat. § 52-577; FN11 *see also Lounsberry v. Jeffries,* 25 F.3d 131, 133-34 (2d Cir.1994). In *Lounsberry,* the Second Circuit held that because "Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations." 25 F.3d at 133. The Court, looking to Connecticut law, went on to find that "[u]nless there is such an explicit statutory provision, every tort claim governed by a Connecticut statute of limitations is subject to § 52-577's three-year period." *Id.* at 134; *see also Orticelli v. Powers,* 197 Conn. 9, 16, 495 A.2d 1023 (1985) (affirming that "the three year statute of limitations contained in General Statutes § 52-577[is] the operative statute of limitations in a § 1983 action").

> FN11. Connecticut General Statute § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

The events of which Plaintiff complains range from the 1995 examination (implicated by though not specified in Count Three of the Amended Complaint) through the 2003 examination. The original complaint was filed on June 15, 2004, fixing the limitations period as commencing on June 15, 2001. In the Ruling on Defendants' Motion to Dismiss, this Court denied Defendants' Motion to Dismiss on the ground that the claims were time-barred, finding that Plaintiff had alleged a continuing course of discriminatory conduct rather than discrete acts. *See* Rul. Mot. Dismiss at 4-5. The Court noted that although discrete acts occurring prior to June 15, 2001 would be barred by the statute of limitations, under the continuing violation theory, individual acts done in fur-

therance of a continuing, overarching discriminatory policy or mechanism are not. *Id.* at 5, 495 A.2d 1023 (citing *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993); *Patterson v. County of Oneida,* 375 F.3d 206, 220 (2d Cir.2004)). For purposes of the Motion to Dismiss, the Court credited Plaintiff's allegations as true and afforded him the benefit of all inferences reasonably drawn in his favor. *See* Rul. Mot. Dismiss at 5. For purposes of the Motion for Summary Judgment, however, Plaintiff is required to produce evidence showing that his case falls within the continuing violation exception, i.e., that any acts complained of that occurred prior to June 15, 2001 were done in furtherance of the alleged policy or practice of racial discrimination and/or retaliation. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997) ("Although the mere allegation of the existence of [a discriminatory] policy would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment on the issue."); *see also Weeks v. New York State,* 273 F.3d 76, 82-83 (2d Cir.2001) (holding that "the continuing violation exception applies only where there are 'specific' or 'identifiable' discriminatory customs or practices, or specific and related acts that are tantamount to such customs or policies"). If Plaintiff is unable to produce such evidence, the allegations in the Amended Complaint, insofar as they are predicated on events occurring prior to June 15, 2001, will be dismissed as untimely.

**\*13** Plaintiff first complains about the 1995 police sergeant eligibility list, alleging that Defendants Croughwell, the Hartford Police Department and the City of Hartford "closed down" the 1995 police sergeant eligibility list in 1997, when "the next three persons in line for appointment were minority officers," including Plaintiff. Am. Compl. ¶ 14. The next event of which Plaintiff complains is the 1999 police sergeant examination, alleged to be racially biased. Am. Compl. ¶ 15. Defendants argue that because these "events are not only more than two years apart in time with nothing intervening in the interim," "are of a different nature," and "involve different actors," they constitute "discrete acts" and should be barred by the statute of limitations. Defs' Mem. Supp. Mot. Summ. J. at 6 (citing *Nat'l R.R. Passenger*

*Corp. v. Morgan,* 536 U.S. 101, 112-15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). Distinguishing between series of acts which constituted or created a hostile work environment on the one hand and discrete acts of a discriminatory character which individually constituted discrete retaliatory acts, albeit with some continuity or relation to one another, the Supreme Court foreclosed recovery for the latter acts except insofar as they fell within the limitation period. *Morgan,* 536 U.S. at 113.

In order to invoke the continuing violation exception, Plaintiff must show either: (1) "specific ongoing discriminatory policies or practices" or (2) "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Weeks,* 273 F.3d at 82 (brackets in original) (quoting *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998), in turn quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)). The Second Circuit has held, however, that "[a]bsent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception." *Id.* at 84; *see also Quinn,* 159 F.3d at 766 (holding that the acts alleged by the plaintiff, separated by a three-year gap and three one-year gaps, were "not continuous in time with one another or with the timely acts that she has alleged," and that such discontinuity was fatal to her "continuing violation" theory); *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998) (finding that discrimination allegedly suffered before and after a six-year gap "cannot be joined as a 'continuing violation' "); *Selan v. Kiley,* 969 F.2d 560, 566-67 (7th Cir.1992) (finding that a two-year gap between alleged discriminatory events "negates the contention that the acts were continuous or connected").

The Court finds that Plaintiff has not submitted evidence sufficient to find that all of the acts complained of were committed in furtherance of a continuing policy or practice of racial discrimination, and as such, Plaintiff's allegations regarding the 1995 examination and other allegations regarding conduct occurring prior to June 15, 2001 are dismissed. Those events may, however, "constitute relevant background evidence" in a proceeding where the re-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1438649 (D.Conn.)
(Cite as: Slip Copy)

Case 3:02-cv-01026-CFD    Document 113-2    Filed 10/31/2006    Page 13 of 23
Page 13

mainder of the allegations are at issue. *Morgan*, 536 U.S. 101, 112, 122 S.Ct. 2061, 153 L.Ed.2d 106 (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Plaintiff's allegations regarding the 1999 examination and the resulting eligibility list are not dismissed. Although the examination was administered prior to June 15, 2001, the promotion eligibility list generated by that examination did not expire until December 6, 2002. The allegations surrounding the examination and the eligibility list may be considered as one "mechanism" pursuant to the "continuing violation" theory and therefore are not barred by the statute of limitations.

### 2. *Plaintiff's Fourteenth Amendment Claims*

**\*14** In the Amended Complaint Plaintiff claims, pursuant to 42 U.S.C. § 1983, that Defendants discriminated against him by using a racially biased examination system and using promotion eligibility lists in a discriminatory manner (Count Three) and violated his right to equal protection by giving him a racially biased examination and by failing to remedy that bias (Count Five). FN12 Am. Compl. ¶¶ 34-35; 38-39. Defendants argue that Plaintiff's § 1983 claims must fail because Plaintiff cannot prove that the City of Hartford's promotional examination was purposefully discriminatory. *See* Defs' Mem. Supp. Mot. Summ. J. at 6-10.

> FN12. Although it is clear that an employee can bring an employment discrimination suit under § 1983 without bringing a Title VII claim, *see Annis v. County of Westchester, 36 F.3d 251 (2d Cir.1994)*, the § 1983 claim must be based on a distinct violation of a constitutional right, such as a claim for denial of equal protection. *Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir.2004)* (quoting *Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir.1994)*). Without any authority cited to the contrary, the Court will assume that Count Three of the Amended Complaint is also brought pursuant to the equal protection clause of the Fourteenth Amendment and will consider it along with Count Five here.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001)* (quoting *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)*). Traditional equal protection claims involve alleged discrimination or disparate treatment against people based on a protected or suspect classification, such as race. *Id.; accord Jackson v. Burke, 256 F.3d 93, 96 (2d Cir.2001)*. To prevail on his claim, Plaintiff must show both: (1) that he was treated differently from other similarly situated individuals and (2) that the alleged differential treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assoc., 273 F.3d at 499* (quoting *LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir.1994)*).

Pursuant to *Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)*, the test for a violation of the Constitution based on employment discrimination is stricter than the test under Title VII. *See Wintz v. Port Authority of New York & New Jersey, 551 F.Supp. 1323, 1325 (S.D.N.Y.1982); Geller v. Markham, 481 F.Supp. 835, 839 (D.Conn.1979)* ("In *Washington v. Davis,* when the Court announced that disparate impact alone is insufficient to establish a prima facie case of a violation of the Equal Protection Clause, it carefully distinguished this rule from the rule which is applicable in statutory Title VII claims."). Three years later, the Supreme Court made it clear that the *Washington v. Davis* "intent" standard applies to § 1983 claims based on the Fourteenth Amendment. *Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)*. Courts since then have held that a § 1983 plaintiff, to prevail, must establish that the defendants purposefully discriminated against him based on his race. *Knight v. Nassau County Civil Serv. Comm'n, 649 F.2d 157 (2d Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981)*. When such a showing is not made, the case will fail. Even in cases involving suspect classifications subject to heightened scrutiny under the Fourteenth Amend-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ment, disparate effects alone are insufficient to establish an equal protection violation. *See Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 372-73, 121 S.Ct. 955, 967, 148 L.Ed.2d 866, 883 (2001) (citing *Washington v. Davis,* 426 U.S. at 239).

**\*15** The parties' dispute on this issue centers around whether Plaintiff has proved that the City of Hartford's promotional examination was "purposefully discriminatory." *See* Defs' Mem. Supp. Mot. Summ. J. at 8-10; Pl's Mem. Opp. Mot. Summ. J. at 20-21. " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker, in this case [the City of Hartford], selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney,* 442 U.S. at 279 (internal citation omitted); *accord McClesky v. Kemp,* 481 U.S. 279, 298, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Proof of such discriminatory intent must rely on objective factors, some of which were outlined in *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). *See Feeney,* 442 U.S. at 279 n. 24. In *Arlington Heights,* the Supreme Court outlined factors indicative of discriminatory intent, including, *inter alia,* (1) "[t]he impact of the official action," i.e., "whether it bears more heavily on one race than another," (2) "[t]he historical background of the decision ... particularly if it reveals a series of official actions taken for invidious purposes," (3) "[t]he specific sequence of events leading up to the challenged decision," (4) "[d]epartures from the normal procedural sequence," (5) "substantive departures ... particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached," and (6) "[t]he legislative or administrative history ... especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." 429 U.S. 252, 266-68, 97 S.Ct. 555, 50 L.Ed.2d 450 (internal citations and quotation marks omitted). The requisite discriminatory purpose need not be express and may be proved indirectly, however, a law or other governmental policy, "neutral on its face and serving ends

otherwise within the power of government to pursue, is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than another." *Washington v. Davis,* 426 U.S. at 241-42.

Under the standard promulgated in *Davis,* Plaintiff must provide more than evidence of disparate impact in order to prove intentional discrimination and be entitled to relief on his Equal Protection claim. Specifically, Plaintiff must present evidence to establish that, because of his race, he was treated less favorably than whites and that such treatment was purposeful or intentional. *See Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597. Defendants contend that there is no evidence of intentional discrimination in this case, arguing that the facts that they arranged for individuals from other municipal police departments to administer the oral examinations and administered validated written examinations demonstrate the lack of invidious racial discrimination. Defs' Mem. Supp. Mot. Summ. J. at 9-10. One of Plaintiff's pieces of key evidence, the October 27, 1999 letter from Bruce Davey, makes reference to the disparate impact of the 1999 written examination upon minority candidates, but concludes that "the results are defensible based on the test's validity." FN13

> FN13. In his October 27 letter, Davey discusses the adverse impact on minority candidates, stating that the pass rate for Black and Hispanic candidates was 41% and 40% respectively, as compared to an overall pass rate of 70%. Davey goes on to discuss the showing of validity necessary to justify use of the test in the face of such adverse impact. He states that the examination "was developed based on a thorough analysis of the competencies required to perform the Sergeant's job, and the test questions were selected for their importance based on a review by a panel of seven law enforcement experts. Moreover, many of the individual questions have been statistically validated as predictors of job performance." *See* Oct. 27, 1999 letter, Comstock Aff. at Exh. 2.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*16** Plaintiff, however, attacks Defendants' alleged unwillingness to disclose the October 27, 1999 letter from Bruce Davey and Associates. Pl's Mem. Opp. Mot. Summ. J. at 20. Plaintiff also argues that the Defendants should have disclosed a subsequent letter, dated January 6, 2000, that Davey wrote in response to the questions and concerns of the attorney for the plaintiffs in *Cintron v. Vaughn.* In the second letter, Davey went into more detail about the validation process for the examination and provides further and more in-depth evidence of its validity. *See* Exh. 3 to Comstock Aff. Plaintiff does not indicate what kind of disclosure is contemplated or how the lack thereof evinces purposeful or intentional discrimination on the part of Defendants. In light of the fact that both letters affirm the test's validity, it is difficult to see how Defendants would be under any obligation to independently disclose its contents.FN14

> FN14. Moreover, as discussed earlier, the undisputed evidence shows that upon request, Ms. Comstock, the Principal Personnel Analyst at the time, provided a copy of Mr. Davey's communication to Attorney Schulman, who represented plaintiffs involved in *Cintron v. Vaughn.* Pl's Rule 56(a)(2) Statement ¶ 42.

As the Supreme Court observed in *Washington v. Davis,* it is not clear "how a law establishing a racially neutral qualification for employment is nevertheless racially discriminatory and denies 'any person ... equal protection of the laws' simply because a greater proportion of Negroes fail to qualify than members of other racial or ethnic groups." 426 U.S. at 245. Justice White goes on to say that employees who are less competent, as measured by the tests, cannot complain of discrimination vis-a-vis those employees who are more competent. Specifically, the Court held that the fact that "other Negroes also failed to score well would, alone, not demonstrate that respondents individually were being denied equal protection of the laws by the application of an otherwise valid qualifying test being administered to prospective police recruits." *Id.* at 246.

This is similar to what Plaintiff is claiming here. Although he has alleged that the content of the examin-

ations are biased against minorities, he has failed to produce evidence in that regard. The evidence before the Court demonstrates that the 1999 examination had an "adverse impact" on minority applicants and that Plaintiff believes that his scores for the oral examination were altered.FN15 Plaintiff has also claimed that there was no discernable difference between the 1999 examination and the examination given in 2003. Plaintiff has admitted, however, that when he took the 1995, 1999 and 2003 police sergeant examinations, he found nothing about the questions on the three exams to suggest that white candidates would understand them better than black candidates would. *Id.* ¶¶ 16, 47, 66. Moreover, during the oral portion of the exam, the oral panelists-which were not members of or affiliated with the Hartford Police Department-did not do or say anything to indicate to Plaintiff that his race mattered to them. *Id.* ¶¶ 16, 48, 67. Plaintiff has not shown that the examinations were invalid or racially biased. This is not the purposeful invidious race-based discrimination necessary for a finding that Defendants' promotional policies and procedures violate the equal protection clause of the Fourteenth Amendment. *See Washington v. Davis, 426 U.S. at 239* ("Our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a racially disproportionate impact").

> FN15. As noted above, however, Plaintiff has no evidence indicating that the scores he received from the oral panelists on the 1995 exam were not an honest assessment of his performance on that exam nor that panelists' grading was racially skewed. Pl's Rule 56(a)(2) Statement ¶ 19.

**\*17** Plaintiff also makes the unsupported assertion that the oral panelists were predominantly white and thus, by implication, biased against him on the basis of his race. *Id.* at 20. The only evidence on this issue, however, is presented in Defendants' Rule 56(a)(1) Statement, which provides the races of the oral examiners for the 1999 examination. As Plaintiff admits, the evidence shows that for the 1999 oral examination, five of the panelists were white, three were black and one was hispanic. *See* Pl's Rule 56(a)(2)

Slip Copy
Slip Copy, 2006 WL 1438649 (D.Conn.)
(Cite as: Slip Copy)

Case 3:02-cv-01026-CFD      Document 113-2      Filed 10/31/2006      Page 16 of 23
Page 16

Statement ¶ 37. This is not sufficient to constitute evidence of purposeful discrimination.

Plaintiff contends that evidence showing that decisionmakers promoted white officers in the absence of vacancies, extended lists from which white officers would benefit and closed lists where a significant number of minority officers would benefit provides the requisite evidence of purposeful discrimination. Pl's Mem. Opp. Mot. Summ. J. at 21. Specifically, Plaintiff has presented evidence going to show that two officers were promoted to the rank of lieutenant in the absence of any existing vacancies. *See* Pl's Aff. at Exh. B (showing the promotions of Cancel and Camilleri on July 28, 1996 and the status report for the week of July 29, 1996 showing two overages for the lieutenant position). Similarly, the status report for January 4, 1999 shows that there were four captains and one vacancy for the captain position in that week. The status report for the following week, dated January 11, 1999, shows seven captains and an overage of two captains, indicating that, at least that one time, persons were promoted in the absence of vacancies. *See* Kenton Aff. at Exh. A (containing the status reports for the weeks of January 4 and 11, 1999). Plaintiff also notes that the status report for January 4, 1999 shows that there were four deputy chiefs although only three positions were authorized, resulting in one overage. *See* Kenton Aff. at Exh. A. Plaintiff cites, as another example, the status reports for the weeks of March 9, 1998 and April 14, 1998, which show that two officers were promoted to Assistant Chiefs in the absence of any existing vacancies. *See id.* Plaintiff contends that during these periods, the "vacancies in the ranks of sergeant remained empty" and argues that this "arbitrary exercise of power" is within the chief of police's control and evidences a pattern of discrimination against minority officers. *See* Pl's Mem. Opp. Mot. Summ. J. at 17-18. Plaintiff does not, however, present evidence as to the race of the persons promoted. Moreover, Plaintiff offers no evidence to show that the promotions were made in a discriminatory manner.[FN16]

FN16. Plaintiff also cites the promotion of Deputy Chief Daryl Roberts from the rank of lieutenant to deputy chief without having served as a captain as evidence of the arbitrary and discriminatory exercise of power. Pl's Mem. Opp. Mot. Summ. J. at 18. Plaintiff, however, fails to note that Roberts is also a black male.

Similarly, Plaintiff offers no evidence to support his theory that promotion lists were not extended for discriminatory reasons, and specifically, that filling only nine of the eighteen police sergeant vacancies in May of 1997 was motivated by racial bias against Plaintiff. Due to his position on the promotional eligibility lists-i.e., at the bottom of the list in relation to unfilled vacancies-Plaintiff would have been eligible for promotion only to the extent that another individual, ranked higher on the list, would not have been promoted. Although Plaintiff argues that the promotional eligibility lists were shut down in a discriminatory manner, the only evidence presented with regard to this issue indicates that at the time the 1995 promotional list expired, seven of the next ten eligible candidates for promotion were white, two were hispanic and only one-Plaintiff-was black. *See* Pl's Rule 56(a)(2) Statement ¶¶ 28-30. Defendants assert that not all vacancies are filled at all times and that more often than not, they are not filled.[FN17] *See* Defs' Mem. Supp. Mot. Summ. J. at 12. In the face of such a paucity of evidence of discrimination, Plaintiff's bald assertion that the manner in which the list was closed down was "inconsistent with the customary policy of the Hartford Police Department"-which, according to Plaintiff, was to extend lists until all vacancies had been filled-is insufficient to conclude that the list was not extended for discriminatory reasons. The failure to fill available vacancies has the same impact on any candidate eligible for promotion as it does on Plaintiff and he has presented no evidence to show that Defendants declined to fill vacancies for discriminatory reasons. Without more evidence it cannot be said that, even if the police chiefs exercised power "arbitrarily," they also did so in a purposefully discriminatory manner.

FN17. It is undisputed that vacancies have frequently remained unfilled. For example, the parties agree that as of September 13, 1999, two captain, four lieutenant, seven sergeant and five police officer positions remained unfilled, as of October 18, 1999, two

captain, four lieutenant, seven sergeant, two detective and six police officer positions remained unfilled, as of January 31, 2005, one assistant chief, eleven lieutenant, sixteen sergeant, seven detective and sixty-eight police officer positions remained unfilled and as of June 20, 2005, one captain, six lieutenant, fifteen sergeant, three detective and seven police officer positions remained unfilled. Defendants cite numerous other instances of this practice. *See* Pl's Rule 56(a)(2) Statement ¶ 78.

**\*18** Plaintiff also provides statistics purporting to show the existence of a "deliberate policy to insure that whites remain in power in the Hartford Police Department." *See* Pl's Mem. Opp. at 16; Exh. A to Pl's Aff. These statistics show, however, that from 1984 to 1999 the percentage of minority officers increased from 25.20 percent to 37.15 percent and the percentage of female officers increased from 6.6 percent to 11.25 percent. *See* Exh. A to Pl's Aff. During this same period of time, the percentage of minorities in a rank above "officer" increased from 6.67 percent in 1984 to 10.21 percent in 1999, whereas the percentage of whites in a rank above "officer" decreased from 28.69 percent in 1984 to 23.40 percent in 1999. *Id.*

Based on the undisputed facts, it has not been shown that Defendants acted in such a way as to "purposefully discriminate" against Plaintiff, but only that the 1999 police sergeant examination had a disparate impact on minority candidates. *See id.* ¶ 76. Accordingly, summary judgment is granted on Counts Three and Five of the Amended Complaint.

### 3. 42 U.S.C. § 1983 *Claim against the City of Hartford*

#### a. *Policy or Custom*

A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (rejecting respondeat superior as a basis of § 1983 liability); *see also Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 399, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (stating that "in enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights," and holding that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor"). In order to hold a municipality liable under 42 U.S.C. § 1983, Plaintiff must "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), additional citations omitted). Summary judgment is appropriate when a plaintiff fails to present any evidence or allegation of an official policy. *See Sagendorf-Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996).

Such a municipal policy need not be express; the policy or custom may be inferred from the informal actions or omissions of supervisory municipal officials. *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Accordingly, "municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct." *Batista,* 702 F.2d at 397; *see also Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870-71 (2d Cir.1992) ("So long as the discriminatory practices of city officials are persistent and widespread, they 'could be so permanent and well settled as to constitute a custom or usage with the force of law,' and thereby generate municipal liability.") (quoting *Monell,* 436 U.S. at 691). Before the actions of a subordinate city employee could give rise to § 1983 liability, however, "the discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco,* 971 F.2d at 871 (citing *Praprotnik,* 485 U.S. at 130; *Krulik v. Board of Educ. of the City of New York,* 781 F.2d 15, 23 (2d Cir.1986)). A municipality thus becomes accountable for acquiescing in a "custom" only when it knowingly tolerates a pattern or practice of unconstitution-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1438649 (D.Conn.)

**(Cite as: Slip Copy)**

al conduct.

**\*19** Defendants argue that the "undisputed facts of this case demonstrate that, even if the allegations in the complaint are true, they could not have taken place pursuant to any established policy of the City of Hartford, as the City's adopted policies are ones of non-discrimination." Defs' Mem. Supp. Mot. Summ. J. at 15. Plaintiff does not dispute the fact that the official city policy prohibits racial discrimination. However, Plaintiff asserts that despite the non-discrimination policy in the City Charter, "the Police Chief had policy making authority by exercising, repeatedly and with the acquiescence of the City, the power to extend or not extend [promotional eligibility lists]." Pl's Mem. Opp. at 25.

If, as Plaintiff argues, his contention is that the actions complained of were "taken or caused by an official whose actions represent official policy," then it is the job of this Court to "determine whether that official had final policymaking authority in the particular area involved." _Jeffes v. Barnes,_ 208 F.3d 49, 57 (2d Cir.2000) (citations omitted). It is not sufficient for Plaintiff to show that the official had _discretion_ in a certain area; "[o]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." _Id._ (quoting _St. Louis v. Praprotnik,_ 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), in turn quoting _Pembaur v. City of Cincinnati,_ 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).

"[T]he official in question need not be a municipal policymaker for all purposes." _Id._ With respect to the conduct challenged, the official must be "responsible under state law for making policy in that area of the [municipality's] business." _Id._ (quoting _Praprotnik,_ 485 U.S. at 123); _see also Pembaur,_ 475 U.S. at 481 (plurality opinion) (holding that the official must "possess[ ] final authority to establish municipal policy with respect to the action ordered"). The issue of whether the official in question is a "final policy-maker" in a given area is a question of law "to be resolved by the trial judge before the case is submitted to the jury." _Jett v. Dallas Indep. Sch. Dist.,_ 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989);

_accord Jeffes,_ 208 F.3d at 57. The Second Circuit has held that "[w]here a plaintiff relies ... on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law." _Jeffes,_ 208 F.3d at 57-58.

To determine who possesses final policymaking authority, the Court looks to state law. _McMillian v. Monroe County,_ 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (explaining that a court's "understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law"). The City of Hartford adopted Equal Employment Opportunity ("EEO") policies in 2002. Pl's Rule 56(a)(2) Statement ¶ 105. The City of Hartford Affirmative Action and EEO Policy states that "it is the policy of the City of Hartford to uniformly apply criteria for recruitment, selection, assignment, evaluation, compensation, promotion, discipline and other personnel actions without regard to race, color, sex, religion, national origin, age, mental or physical disability, sexual orientation, marital status or ancestry." _Id._ ¶ 106 (quoting Kenton Aff. ¶ 9). The Hartford Charter, in effect through December of 2003, provides that "all powers vested in the City of Hartford shall be exercised by the Court of Common Council," _see_ Chapter II, Section 8, that "final policy-making authority over the organization, the conduct and operation of all City departments, including the creation of personnel policy, is vested in the Court of Common Council," _see_ Chapter III, Section 14, that "no person in the classified service of the city seeking admission thereto shall be appointed, promoted, reduced, removed or in any way favored or discriminated against because of his race, his national origin or his political or religious opinions or affiliations," _see_ Chapter XVI, Section 12, that the Director of Personnel has the authority to "prepare and recommend to the personnel board rules to carry out of the provisions of this chapter," _see_ Chapter XVI, Section 2, that the Personnel Board has "the authority to adopt or amend rules recommended by the Personnel Director after public hearing," _see_ Chapter XVI, Section 5, and that the Court of Common Council has "final

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

authority to approve or disapprove the rules adopted by the Personnel Board," *see* Chapter XVI, Section 5. Pl's Rule 56(a)(2) Statement ¶¶ 107-12 (quoting the Hartford City Charter).

**\*20** Nowhere in the Charter is the Police Chief given any power to create policy with respect to employment decisions. The Charter, Chapter X, Section 2, provides only that:
The chief of police shall be in direct command of the department of police. Subject to the provisions of Chapter XVI of this charter he shall appoint and remove all other officers and employees of the department. He shall assign all members of the department to their respective posts, shifts, details and duties. He shall make rules and regulations, in conformity with the ordinances of the city, concerning the operation of the department and the conduct of all officers and employees thereof.

*Id.* ¶ 113 (quoting Hartford City Charter, Ch. X. § 2). Notably, the Police Chief's powers to appoint or remove-including his power to make promotions-are expressly made "subject to" the antidiscrimination provisions of Chapter XVI. In contrast to this grant of discretion with respect to employment decisions, the Police Chief is given authority to make rules and regulations-in conformity with city ordinances-concerning the operation of the department and the conduct of its employees.

This separation of policymaking authority from a grant of discretion is the situation contemplated by the Supreme Court in *Pembaur,* 475 U.S. at 484 n. 12:
[T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees

and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.

According to *Pembaur,* a grant of discretion is not equivalent to policymaking authority and, importantly, does not give rise to municipal liability. Plaintiff must show something more than that the Police Chief had authority to exercise discretion in making hiring and promotion decisions. *See Looby v. City of Hartford,* 152 F.Supp.2d 181, 188-89 (D.Conn.2001) (holding, in "the absence of any evidence that the Director of Personnel or the Personnel Board had delegated their authority to make employment policy to the Chief," that the municipality was entitled to summary judgment on the plaintiff's § 1983 claims).

**\*21** In this case, as in *Looby,* Defendants Croughwell, Barrows and Marquis, during their respective tenures as police chiefs, were constrained by policies established in the Personnel Rules and by the Court of Common Council and the City Manager. Important to this issue, Plaintiff has admitted that Rule VII of the City of Hartford Personnel Rules and Regulations provides that it is the Personnel Director who, with the approval of the Personnel Board, has the discretion to extend a promotional eligibility list for up to one year. Pl's Rule 56(a)(2) Statement ¶ 3. When promotional vacancies do occur within a City of Hartford department, it is the Director of Personnel who certifies to the department head names of eligible employees from the eligibility list. *Id.* ¶ 4. Plaintiff has not presented any evidence showing that the individual defendants had any ability to alter these policies. Based on the foregoing, it is evident that the individual defendants did not have policymaking authority with respect to promotions nor with respect to extending promotional eligibility lists. Accordingly, the City of Hartford is entitled to summary judgment on all § 1983 claims.

4. *42 U.S.C. § 1983 Claims against the Individual Defendants*

### a. *Personal Involvement*

As stated above, the doctrine of respondeat superior does not apply to § 1983 actions. Accordingly, for Plaintiff to maintain a cause of action against an official (i.e., the individual defendants), he must show that the official was "personally involved in the alleged deprivation of his constitutional rights." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997); *accord Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) ("when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required"). In order to hold supervisory officials liable under § 1983, Plaintiff must show that he or she:

(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

*Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (citing *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986)).

Plaintiff does not allege that the individual defendants sat on any oral examination panel that evaluated Plaintiff or that any of them altered or affected his scores in any way. *See* Pl's Rule 56(a)(2) Statement ¶ 84. Moreover, Plaintiff concedes that his name never appeared on a certification list for promotion provided to Defendants Croughwell, Barrows or Marquis while each was serving as police chief. *See id.* ¶¶ 73-75. Plaintiff does allege, however, that the individual defendants directly participated in the constitutional deprivation. Specifically, Plaintiff claims that the individual defendants, in a discriminatory manner, (1) extended promotional eligibility lists when candidates were white, (2) promoted white candidates in the absence of vacancies and (3) declined to extend the promotional eligibility lists when minorities made up a large percentage of the remaining candidates. Pl's Mem. Opp. Mot. Summ. J. at 26.

**\*22** Plaintiff admits, however, that not all vacancies existing at any particular rank within the Hartford Police Department are filled. *See* Pl's Rule 56(a)(2) Statement ¶ 76. Plaintiff also admits that it is the Personnel Director who, with the approval of the Personnel Board, has the discretion to extend promotional eligibility lists. *Id.* ¶ 3. Defendants assert that the question of whether vacancies are filled depends on a number of varying factors, whereas Plaintiff contends that "the Police Chief has enormous discretion in this matter and has on occasion extended lists for two extension periods, such as in the case of the 2000 Captain's list." *Id.* (citing Buyak Aff. ¶ 3; Roberts Aff. ¶ 4). Although Plaintiff claims that the 2000 Captain's list was extended for two six-month periods, it is clear that a failure to extend eligibility lists is not uncommon. For example, with regard to the duration of eligibility promotion lists, the parties agree that the 1975 police sergeant eligibility list was not extended beyond its original two-year duration, the 1982 list was not extended, the 1990 list was extended for an additional year, the 1995 list was not extended, the 2000 list was extended for an additional year and the 2004 list was scheduled to expire on February 27, 2006. *Id.* ¶¶ 85-90. Similarly, it has been established that the 1976 police lieutenant eligibility list was not extended beyond its original two-year duration, the 1981 and 1990 lists were both extended for an additional year, the 1994 list was not extended beyond its original two-year duration and the 2001 list was extended for an additional year. *Id.* ¶¶ 98-102.

Plaintiff also alleges that the individual defendants are liable under a failure to remedy theory. Specifically, Plaintiff claims that the individual defendants "did not take action to invalidate the 1998/9 sergeant's list when the adverse racial impact of the test became apparent." Pl's Mem. Opp. at 26. The Court assumes that by becoming "apparent," the Plaintiff is referring to the October 27, 1999 letter from Bruce Davey and Associates to Susan Comstock. As stated previously, however, the letter makes reference to the disparate impact of this examination but ultimately confirms its validity. Moreover, Plaintiff conceded that he did not "know for a fact" whether Susan Comstock shared the letter in question with anyone or whether anyone ever shared the letter with Chief

Slip Copy
Slip Copy, 2006 WL 1438649 (D.Conn.)
(Cite as: Slip Copy)

Case 3:02-cv-01026-CFD    Document 113-2    Filed 10/31/2006    Page 21 of 23    Page 21

Croughwell, acting Chief Barrows or Chief Marquis. *See* Pl's Depo. at 31-33. Accordingly, Plaintiff does not proffer sufficient evidence to find the individual defendants personally liable.

### b. *Qualified Immunity*

Defendants argue that even if the Court finds that the individual defendants were personally involved in the alleged constitutional deprivations, summary judgment should still be granted in their favor because they are shielded from liability by the doctrine of qualified immunity. "Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by qualified immunity." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *accord Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (finding qualified immunity to be "essentially [a] legal question").

*23 "The privilege of qualified immunity generally shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Ying Jing Gan,* 996 F.2d at 532 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Government officials are entitled to qualified immunity if the alleged unlawful action is, as a matter of law, objectively reasonable when "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), in turn quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19). To determine whether a particular rule was "clearly established" at the time of the alleged constitutional deprivation, the Second Circuit directs courts to consider:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable

defendant official would have understood that his or her acts were unlawful.

*Id.* at 533 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

Even where a plaintiff's federal rights and the scope of an official's permissible conduct are shown to be "clearly established," the privilege of qualified immunity "should be upheld unless the 'contours of the right' were 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* (quoting *Anderson v. Creighton,* 483 U.S. at 640). A government official's actions are "objectively unreasonable" and not protected by qualified immunity when "no officer of reasonable competence could have made the same choice in similar circumstances." *Anthony v. City of New York,* 339 F.3d 129, 137 (2d Cir.2003) (quoting *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir.1995)); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (citation and quotation marks omitted).

Summary judgment is appropriate in cases where the defendant can show that it was unclear at the time he or she acted that "the interest asserted by the plaintiff was protected by federal law" or, even if the plaintiff's rights were "clearly established" and his interests clearly protected by federal law, where it was at least "objectively reasonable for [the official] to believe that his acts did not violate those rights." *Ying Jing Gan,* 996 F.2d at 532 (quoting *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)). The asserted constitutional right, i.e., to be free from racial discrimination, was "clearly established" at the time the alleged wrongful acts occurred. Defendants have demonstrated, however, that promotional eligibility lists were often not extended past their original term and it is undisputed that Plaintiff's name never appeared on a list certified to any of the individual defendants. Moreover, Plaintiff has not established that the failure to extend promotional eligibility lists had a disparate impact on minority candidates. Accord-

ingly, Plaintiff has not shown that the individual defendants' acts were so unreasonable that "no officer of reasonable competence could have made the same choice in similar circumstances." *Anthony,* 339 F.3d at 137. Accordingly, because Plaintiff has not shown the requisite level of personal involvement and because the individual defendants are protected by the defense of qualified immunity, the individual defendants are entitled to summary judgment on all § 1983 claims.

### 5. *42 U.S.C. § 1983 Claims against the Individual Defendants in Official Capacities*

**\*24** As Defendants correctly argue, any § 1983 claims against the Individual Defendants in their Official Capacities should be dismissed, as public officials named in their official capacities are not "persons" subject to suit under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and thus "is no different from a suit against the State itself"). Plaintiff, however, claims that he is suing the individual defendants only in their individual capacities and not in their official capacities, thus rendering Defendants' argument and decision on this issue unnecessary. *See* Pl's Mem. Opp. Mot. Summ. J. at 28-29.

### 6. *42 U.S.C. § 1983 Claims against the Hartford Police Department*

Although a municipality is subject to suit pursuant to 42 U.S.C. § 1983, *Monell,* 436 U.S. at 690, a municipal police department is not a municipality nor a "person" within the meaning of § 1983. *See Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir.1992) (affirming district court's dismissal of claims against county sheriff's department because, under state law, sheriff's department lacked capacity to be sued); *accord Nicholson v. Lenczewski,* 356 F.Supp.2d 157, 163-64 (D.Conn.2005) (collecting cases). A municipal police department is "a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." *Nicholson,* 356 F.Supp.2d at 164. "Because a municipal police de-

partment is not an independent legal entity, it is not subject to suit under section 1983." *Id.* at 164; *accord Jones v. Waterbury Police Dep't,* No. 3:04cv2137 (MRK), 2005 U.S. Dist. LEXIS 9411, \*4 (D.Conn.2005). Accordingly, Plaintiff's § 1983 claims against the Hartford Police Department are dismissed.

### 7. *Retaliation Claim*

With regard to his § 1983 retaliation claim, Plaintiff has not alleged a cognizable violation of the Constitution, unless Plaintiff has erroneously failed to cite the First Amendment. *See Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (holding that a § 1983 claim must be "based on a distinct violation of a constitutional right") (quoting *Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994)). Plaintiff would be granted an opportunity to amend his complaint in this regard, however, in light of the fact that Plaintiff's § 1983 claims have been dismissed on other grounds, leave to amend would be futile and is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 36] is granted on all remaining counts and Defendants' Motion to Strike [Doc. No. 53] is granted in part and denied in part. The Clerk shall close the case.

SO ORDERED.

D.Conn.,2006.
Knight v. Hartford Police Dept.
Slip Copy, 2006 WL 1438649 (D.Conn.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3627556 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Portions of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Oct. 24, 2005) Original Image of this Document (PDF)
• 2005 WL 3627557 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Motion to Strike Portions of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Oct.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1438649 (D.Conn.)
**(Cite as: Slip Copy)**

24, 2005) Original Image of this Document (PDF)

• 2005 WL 3627558 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Oct. 24, 2005) Original Image of this Document (PDF)

• 2005 WL 2892146 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for Summary Judgment (Sep. 27, 2005) Original Image of this Document (PDF)

• 2005 WL 2892148 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Sep. 24, 2005) Original Image of this Document (PDF)

• 3:04cv00969 (Docket) (Jun. 15, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.